**WHITE HALL BUILDING
CORPORATION**

v.

**PROFEXRAY DIVISION OF LITTON
INDUSTRIES, INC.**

v.

**CENTER CITY X–RAY LAB, INC., et al.**

**Civ. A. No. 73–1000.**

United States District Court,
E. D. Pennsylvania.

Nov. 27, 1974.

Joseph A. Gerber, Philadelphia, Pa., for plaintiff.

John J. Walsh, Jr., Joseph V. Pinto, L. Carter Anderson, Philadelphia, Pa., William G. Adamson, Media, Pa., E. Paul Maschmeyer, James D. Wilder, Philadelphia, Pa., for defendant.

ORDER

NEWCOMER, District Judge.

Defendant Hope X-Ray Products, Inc., presently stands before this Court with a motion to join, as real parties in interest under Rule 17(a) of the Federal Rules of Civil Procedure, two insurers of plaintiff who have transferred funds to plaintiff in the form of a purported loan rather than outright payment. For the reasons set forth below, this Court has determined that it must deny this motion.

Plaintiff commenced this action to recover the sum of Three Hundred Twenty Thousand and Forty Dollars ($320,040.) for property damage sustained at plaintiff's building located at 249 N. Broad Street, Philadelphia, Pennsylvania, when a machine manufactured by the defendant, Profexray Division of Litton Industries, Inc., malfunctioned and caught fire. Plaintiff subsequently amended the complaint to add additional claims for loss of personal property of Fifty-eight Thousand Dollars ($58,000) and loss of rental income of One Hundred Eight Thousand Dollars ($108,000). At the time of the fire in question, plaintiff carried fire insurance for its building with Potomac Insurance Company a part of General Accident Group. After the fire, Potomac and General paid plaintiff One hundred ninety-seven thousand dollars ($197,000) by way of so-called "loan receipts", by which Potomac Insurance and General Accident purported to loan plaintiff the sum of money transferred, and by which plaintiff was obligated to pay Potomac and General Accident if plaintiff recovered from another party or parties for the fire damage. This agreement also provided that as security for the loan, plaintiff pledged whatever recovery it might make against another party, and that while plaintiff was to initiate suit in its own name against the party whose negligence allegedly caused the fire, such suit was to be "at the expense of and under the exclusive direction and control of . . . the Potomac Insurance Company".

In due course, several third party defendants were joined in this action and one of those third parties, Hope X-Ray, has filed the motion now before this Court to join Potomac and General Accident as parties plaintiff. Hope contends that because of their payments to plaintiff, Potomac and General Accident have become subrogated to plaintiff's right of

recovery in the present suit, and are therefore real parties in interest under Rule 17(a) of the Federal Rules of Civil Procedure. Plaintiff, on the other hand, argues that because the above payments were made by way of the loan receipt method described above, Potomac and General Accident have not become subrogated to plaintiff's right of recovery, and are therefore not real parties in interest.

Before proceeding to the merits of this issue, this Court would note a preliminary procedural matter which merits some attention. Defendant's motion suggests that the issue of the joinder of Potomac and General Accident turns solely on whether they qualify as real parties in interest under Rule 17(a), and some courts have in fact so treated this issue in cases similar to the one now before this Court. *See City Stores Company v. Lerner Shops of District of Columbia, Inc.*, 133 U.S.App.D.C. 311, 410 F.2d 1010 (1969). Other courts, however, under the approach which would seem more analytically correct, hold that even if a court determines that a party is a real party in interest under Rule 17(a), the court must then decide whether such real party in interest is also a "necessary and indispensable" party under Rule 19, Federal Rules of Civil Procedure. See United States of America v. Aetna Casualty and Surety Company, 338 U.S. 366, 381–382, 70 S. Ct. 207, 94 L.Ed. 171 (1949); Watsontown Brick Company v. Hercules Power Company, 201 F.Supp. 343, 344 (M.D. Pa.1962).

The above considerations are offered, however, merely as points for future reference. Although Hope has presented no motion under Rule 19, the issue of its motion is clear, namely, whether this court should in this case compel the joinder of Potomac and General Accident, and this issue deserves a decision on the merits.

■ The issue presented by defendant's motion does not lend itself to an easy decision. Under the traditional test, a party is a real party in interest under Rule 17(a) if it has the legal right under the applicable substantive law to enforce the claim in question in the case. Northboro v. Wheatland Tube Company, 198 F.Supp. 245, 247 (E.D. Pa.1961); 3A Moore's Federal Practice § 17.02. Since the instant case involves no federal right, the applicable substantive law is that of Pennsylvania. Under the traditional test of Rule 17(a), therefore, the issue in this case becomes whether Potomac and General Accident, having transferred funds to plaintiff under the loan receipt method described above, would have the right under Pennsylvania law to bring the action which plaintiff has currently brought.

Not surprisingly, this Court's research reveals no Pennsylvania case on point. Under the terms of the loan receipt method of transaction, the insured rather than the insurer initiates any court action brought against a third party, and thus neither Pennsylvania's nor other courts would likely encounter the issue of whether the insurer itself could bring the action. It thus becomes necessary to attempt to ascertain what Pennsylvania's courts would do if such issue were in fact raised.

■ Under Pennsylvania law, at least in the opinion of one Federal District Court, an insurance company in the position of an ordinary subrogee has the right, independent of the insured's right, to bring an action against the parties who allegedly caused the loss on which the insurer has paid. St. Paul Fire and Marine Insurance Company v. Peoples Natural Gas Company, 166 F. Supp. 11, 12 (W.D.Pa.1958), which held that an insurance company which paid a policy holder under a fire insurance policy and was thus subrogated to the policy holder's rights had the right to bring an action in its own name against the party whose negligence allegedly caused the fire. This holding agrees with the position of the great majority of jurisdictions. 3A Moore's Federal Practice § 17.09(2.–1).

Except for the fact that the transfer of funds between the insurance companies and plaintiff in this case is called a "loan" rather than an outright payment, the position of Potomac and General Accident resembles that of an ordinary subrogee, and the holding of *St. Paul, supra,* at least initially invites the conclusion that the Pennsylvania courts would allow an insurer like Potomac or General Accident to bring suit itself, like an ordinary insurer/subrogee, if it so desired.

The problem, however, is that to the limited extent it has dealt with loan receipts, Pennsylvania law has in fact not treated an insurer who uses a loan receipt the same as an insurer who makes an outright, unconditional payment. In Arabian Oil Company v. Kirby and Kirby, Inc., 171 Pa. S. 23, 90 A.2d 410 (1952), the leading Pennsylvania case on loan receipts, a shipper sent goods via carrier under an agreement which provided that in the event of damage to the goods, the carrier was to have the benefit of any insurance paid to the shipper, regardless of the carrier's liability for the damage. When the goods were in fact damaged, the shipper sued the carrier after the shipper's insurer had transferred funds to the shipper under the auspices of a loan receipt in an attempt to protect its subrogation interests against the carrier.

A jury subsequently found the carrier liable, who in turn argued that the loan between the insurer and shipper was a sham, and should be applied to offset the carrier's liability pursuant to the provision in the carrier/shipper agreement. The Superior Court rejected this argument, simply citing Luckenbach v. McCahan Sugar Refining Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170 (1918), where the Court, speaking through Justice Brandeis in a case identical to *Arabian,* had held the loan receipt valid under federal common law on grounds that in effect amounted to a balancing of the equities between insurer and carrier.

Similarly, in Automobile Insurance Co. v. Springfield Dyeing Co., 109 F.2d 533 (3rd Cir. 1940), the Court of Appeals for this circuit held that a transfer of funds by an insurer under the auspices of a loan receipt did not constitute an admission of liability by the insurer. Plaintiff in that case, a bailee who had insured the goods it held, had sued its insurer on their policy when certain goods were stolen. The insurer argued that under the policy, it was liable only for loss not compensated by the bailor's insurer, and that a purported "loan" the bailor's insurer had made to the bailor should in fact be considered a payment reducing the compensation owed by the bailee's insurer. In rejecting the latter argument, and instead holding the loan receipt valid, the circuit panel relied on federal rather than Pennsylvania authority, but since the decision post-dated Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937), the circuit panel's holding would seem to be a view of what constitutes a "payment" under substantive Pennsylvania contract law.

While neither *Arabian* nor *Automobile Insurance* dealt with the issue central to the real party in interest question, namely, whether the insurer who uses a loan receipt may itself bring suit on its insured's cause of action, the holdings of both these cases nonetheless are directly relevant to this latter issue. *Arabian* and *Automobile Insurance* in effect held that a transfer between insurer and insured by way of a loan receipt insulates the insurer from burdens it would incur from outright payment. By the same reasoning, it would seem that a loan receipt should not entitle the insurer to *benefits* of outright payment, such as the right to bring suit as a subrogee. So it would seem Pennsylvania's courts would have to hold so long as the holdings of *Arabian* and *Automobile Insurance* stand under Pennsylvania law. In such case, under the traditional test of Rule 17(a), the insurer would not qualify as a real party in interest, and a motion like defendant's in this case to join

Potomac and General Accident would have to be denied.

The above reasoning must admittedly remain speculation in the absence of a definitive ruling by Pennsylvania's courts, but there are other reasons which dictate against granting defendant's motion. First, while defendant argues the loan receipt is a sham, courts at every level have given effect to loan receipts for quite some time. See, e. g., besides *Arabian* and *Automobile Insurance, supra,* Luckenbach v. McCahan Sugar Refining Co., 248 U.S. 139, 39 S. Ct. 53, 63 L.Ed. 170 (1918); The Plow City, 122 F.2d 816 (3rd Cir. 1941), a maritime action in which Judge Biggs, speaking for the panel, held that a transfer of funds under a loan receipt did not constitute payment on a policy by an insurer.

Second, with all due respect to the courts which hold to the contrary, see e. g., City Stores Company v. Lerner Shops of District of Columbia, Inc., 133 U.S.App.D.C. 311, 410 F.2d 1010, 1015 (1969), a decision to recognize a loan receipt in circumstances like those of this case would in no way condone an evasion of Rule 17(a). Rule 17(a) was originally intended simply to allow an assignee to sue in his own name, 3A Moore's Federal Practice § 17.09(1.–1), but has come also to serve another equally, if not more important purpose, namely, to protect a defendant against a subsequent action by the party actually entitled to recover, and to insure that a judgment will have its proper final effect. Committee Note of 1966 to Amended Rule 17(a), 3A Moore's Federal Practice § 17.01(8) (2d ed.1974); United Federation of Postal Clerks, AFL–CIO v. Watson, 133 U.S.App.D.C. 176, 409 F.2d 462, 476, n. 34 (1969). In the instant case, even if Potomac and General Accident were not joined, a judgment as to plaintiff would bind both Potomac and General Accident because of their interest in and control of plaintiff's case. One who is not a party of record is nevertheless bound by a judgment, under principles of collateral estoppel rather than res ju-dicata, if he had a sufficient interest in the suit and participated in and con-trolled the litigation. 1B Moore's Fed-eral Practice § 0.411(6) (2d ed. 1974); e. g., Nesbitt v. Allied Mutual Casualty Company, 138 F.Supp. 732 (D.C.Minn. 1956), which held that a judgment as to an insured was binding upon the in-sured's liability insurer where the insur-er, although not named in the action, had in fact controlled the litigation for the insured. Thus, because the absence of Potomac and General Accident as par-ties would not prevent defendant's ob-taining a final decision in this case, a denial of defendant's motion to join the two insurers would in no way serve to undermine Rule 17(a) or its underlying purpose.

In contrast to this lack of prejudice to defendant Hope if Potomac and General Accident are not joined stands the risk of prejudice to the two insurers, and es-pecially to plaintiff, if their joinder is compelled. The law recognizes that the presence of an insurance company on ei-ther side of a case may affect a jury's decision on the merits, and consequently the law prohibits even the mention of the fact of insurance in a case if at all possible. In all candor, this court can discern no reason for Hope's motion to join the insurance companies here other than to gain the possible advantage at trial which the presence of the insurance companies on the plaintiff's side might lend. This Court is not inclined to aid such strategy. At its worst, this preju-dice that might result from the insurers' joinder could result in complete denial of recovery to plaintiff and the insurers. On a lesser level, this prejudice could re-sult in a reduction of damages, in which case the full effect of the prejudice would fall on the plaintiff alone, since the insurers have first lien on any re-covery obtained.

On this point, it is worthy of note that Pennsylvania exempts by stat-ute an insurer from being compelled to join an action as a real party in interest. Pa.Stat.Ann. tit. 12, Rule of Civil Proce-dure 2002 (1967). This procedural rule

of Pennsylvania does not, of couse, bind this court's decision on a federal rule of procedure, but it does represent a studied legislative determination on the issue now before this court.

 Apart from whether Potomac and General Accident are real parties in interest, however, they do not qualify as "necessary and indispensable" parties to this litigation under Rule 19. Rule 19 is meant to insure both that all parties interested in the outcome of a suit have a chance to affect such outcome, and that the parties in any case will have the benefit of finality as to the judgment rendered. See 3A Moore's Federal Practice § 19.07(1) (2d ed. 1974). In the instant case, because of their de facto control of the plaintiff's litigation, Potomac and General Accident clearly have the chance to affect the outcome of this case. Similarly, as noted earlier in this opinion, a judgment in this case would bind both Potomac and General Accident even though they are not parties of record, because of their interest in and control of plaintiff's case. Thus, Rule 19 would not require the joinder of Potomac and General Accident in this case. See, e. g., Wright v. Schebler Co., 37 F.R.D. 319 (S.D.Iowa 1965), where the court held that Rule 19 did not require the joinder of a workmen's compensation carrier/subrogee since the subrogee's absence would not preclude complete and final adjudication and relief in the case.

United States v. Aetna Casualty and Surety Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), does not compel a different result. In that case, after holding *inter alia* that a workmen's compensation carrier/subrogee was a real party in interest under Rule 17(a) who could bring the action in its own name, the Court said in dicta that such subrogee would also be a "necessary" party whose joinder could be compelled under Rule 19. It seems fair to assume, however, the Court had in mind an ordinary subrogee who would not otherwise have participated in the litigation if not joined on motion of the parties. Such case contrasts markedly with the instant one, where the insurer will voluntarily be vitally involved in the litigation even if not formally a party of record. In any event, the *Aetna* Court expressly went on to note that the insurer, while a "necessary" party, was clearly not "indispensable" under Rule 19, 338 U.S. at 382, n. 19, and thus even under *Aetna's* dicta the joinder of an insurer/subrogee is not required.

Accordingly, to summarize, this Court concludes that defendant's motion to join Potomac and General Accident must be denied for any and all of several reasons. First, while Pennsylvania has not ruled on whether an insurer which has paid an insured by way of loan receipts may itself bring suit on its insured's cause of action, consistency with existing Pennsylvania law on loan receipts would indicate that the Pennsylvania courts would answer this question in the negative if the issue were to arise. In such case, Potomac and General Accident would not qualify as real parties in interest under the established test of Rule 17(a).

Second, because denying the motion to join Potomac and General Accident would not prejudice defendant's interest in finality of judgment, such denial would in no way violate the purpose and reason for Rule 17(a).

Finally, while no prejudice to defendant would arise from a denial of its motion, prejudice to Potomac and General Accident, and especially plaintiff, could very possibly arise if defendant's motion were granted.