**Ellen S. BARRY, Appellee,**

v.

**Honoria DONNELLY, William Donnelly, Appellants.**

**No. 85-1289.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 7, 1985.

Decided Jan. 17, 1986.

Joshua Kaufman (Kaufman & Biel, P.C., Washington, D.C., Robert L. Cleveland, Jr., Vienna, Va., on brief), for appellants.

Richard J. Medalie (Friedman & Medalie, P.C., Washington, D.C., James R. Cooke, Arlington, Va., on brief), for appellee.

Before RUSSELL and PHILLIPS, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit Judge:

In this declaratory judgment action, Honoria and William Donnelly appeal from a summary judgment declaring that they are barred by the Virginia statute of limitations from suing to recover from Ellen Barry, a close family friend and alleged bailee, a painting by Mrs. Donnelly's father, Gerald Murphy. Because we conclude that there are genuine issues of fact material to the Donnellys' claim that Ellen Barry should be precluded from asserting the statute of limitations under the doctrine of equitable estoppel, we vacate the district court's order and remand for further proceedings.

## I

Gerald Murphy and his wife, Sara, lived in Paris during the 1920s and counted, among their friends, many of the principal artists and writers of that era, including Picasso, Hemingway, and Fitzgerald. Although his work was not at that time particularly well known, Murphy was himself a serious painter. Since his death in 1964, his paintings have become very valuable.

In 1964, Gerald Murphy brought his painting entitled "Cocktail" to the Washington, D.C., apartment of Ellen Barry, an old and dear friend of the Murphy family. According to Honoria Donnelly, Murphy contemplated that Barry would use and enjoy the painting for as long as she liked, but that she would ultimately return the artwork to his family. Barry maintains that the painting was a gift.

The painting has remained in Ellen Barry's possession and over the years she has loaned it to various museums, each time identifying the work as from the collection of Mrs. Phillip Barry. In October of 1978, Ellen Barry wrote to Honoria Donnelly requesting, for purposes of her "records and insurance," a written confirmation that the painting had been a gift from Gerald Murphy. In March of 1979, Mrs. Donnelly, who now resides in Virginia, responded with a letter indicating that she understood the arrangement to be merely a loan and suggesting that, in order to avoid future estate tax problems, the parties "put something in writing" to this effect.

Honoria Donnelly's letter referred to a conversation that the parties agree transpired sometime previously, probably during 1965, in which Barry indicated that she would eventually give or bequeath the painting to the Donnellys for their son, John. Accordingly, around this time, Mrs. Barry tagged the back of the painting with instructions to "Give to Honoria Donnelly for John Donnelly." The parties disagree, however, as to whether this promise was later reaffirmed by Ellen Barry in discussions that ensued following the correspondence of 1978–79. Thus, Honoria Donnelly claims that notwithstanding Ellen Barry's 1978 assertion of ownership, Barry later confirmed that she would ultimately return the painting to the Donnellys. According to Mrs. Barry, on the other hand, there was no further discussion concerning the disposition of the painting after 1965.

On June 12, 1979, Ellen Barry wrote once more to Honoria Donnelly, again insisting that Gerald Murphy intended the painting as a gift and not as a loan for an indefinite term. According to Honoria Donnelly, it was not until 1983 that she learned that Ellen Barry no longer intended to give or bequeath the work to the Donnellys for their son, John.

On December 5, 1984, Ellen Barry, invoking diversity jurisdiction, sought a declaratory judgment pursuant to 28 U.S.C. § 2201, to resolve this controversy,[1] in which she claims entitlement to the painting as a gift or, alternatively, assuming that the painting was merely loaned, by the running of Virginia's five-year statute of limitations on actions to recover property. Va.Code § 8.01–243(B) (1950).[2] Solely for purposes of her motion for summary judgment, Ellen Barry conceded the Donnellys' characterization of the transaction as a bailment as well as their claim that Barry renewed her promise to return the painting even after her assertions of ownership in 1978–79.

The district court granted summary judgment in favor of Barry, holding that her letter of October 1978 was an act inconsistent with the asserted bailment and therefore triggered the applicable Virginia

---

**1.** This action was apparently filed in response to a letter written on April 4, 1984, by the Donnellys' attorney, in which they offered to refrain from filing a lawsuit to recover the painting in return for Mrs. Barry's commitment to have the painting conveyed to the Donnellys at her death.

**2.** The statute provides, in pertinent part, that "Every action for injury to property ... shall be

statute of limitations.[3] The court characterized Barry's representations that she would return the painting as merely "a promise to do something in the future" rather than fraud sufficient to toll the statute of limitations. Apparently considering that under controlling state law only fraud could have that effect, the court therefore concluded that on the undisputed facts the statute barred any claim by the Donnellys so that Barry was entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c). This appeal followed.

## II

Assuming, as the district court found, that on the summary judgment record the undisputed evidence revealed no conduct amounting to fraud, this did not entitle Barry to judgment as a matter of law. Under Virginia law, one may be estopped to plead the bar of a statute of limitations by conduct short of fraud, under the general doctrine of equitable estoppel.[4] *City of Bedford v. James Leffel & Co.,* 558 F.2d 216, 217–18 (4th Cir.1977). Under that doctrine, estoppel occurs where "the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire." *Id.* at 218. As applied to the statute of limitations, the "central premise is that 'one cannot justly or equitably lull his ad-

versary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute [of limitations], and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.'" *Id.* at 218, *quoting Howard v. West Jersey & S.S.R. Co.,* (1928), 102 N.J.Eq. 517, 141 A. 755, 757–58, *aff'd mem.* 104 N.J.Eq. 201, 144 A. 919 (1929).[5]

While equitable estoppel in both its general applications as well as in its special application to statutes of limitations pleas frequently involves fraud or deceit[6] and is "most clearly applicable" when it does, "deceit is not an essential element of estoppel" in either its general or special applications under Virginia law. *City of Bedford,* 558 F.2d at 218; *T ... v. T ...,* 216 Va. 867, 224 S.E.2d 148, 152 (1976) ("[t]o establish equitable estoppel, it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice"); *see also Lataif v. Commercial Industrial Construction, Inc.,* 223 Va. 59, 286 S.E.2d 159, 161 (1982) (citing *City of Bedford* on elements of equitable estoppel). The essential elements of equitable estoppel, in both its general applications and in its special application to statutes of limitation pleas under Virginia law are only those stated in *T ..: v. T ...,* 224 S.E.2d at 152: "absent a showing of fraud and de-

---

brought within five years next after the cause of action shall have accrued."

**3.** Under *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the district court was bound to apply the conflicts of laws rules of the jurisdiction in which it sat, here Virginia. In that state, questions concerning statutes of limitations are deemed to be procedural and as such are controlled by the law of the forum. *Holdford v. Leonard,* 355 F.Supp. 261, 263 (W.D.Va.1973).

The substantive law of bailments, however, is governed in this case by District of Columbia law, under which a bailment is breached by either an unsuccessful demand by the bailor for return of the property or some other act inconsistent with the bailment. *In re Estate of McCagg,* 450 A.2d 414, 416 (D.C.App.1982).

**4.** The law of the forum determines all matters involving the application of the statute of limitations, including whether and how the statute may be tolled by a particular event. *Restate-*

*ment (Second) of Conflicts* § 142, comment *a* (1971).

**5.** This rationale is of course equally applicable to a declaratory judgment plaintiff who asserts the statute of limitations in anticipation of the institution of litigation by his opponent.

**6.** In consequence, there are statements in some decisions applying Virginia law to cases where fraud or deceit *was* arguably present that may suggest that this was an essential element of equitable estoppel. *See, e.g., Beverage v. Harvey,* 456 F.Supp. 1044, 1046–47 (E.D.Va.1978), *aff'd* 602 F.2d 657 (4th Cir.1979); *American Mutual Liability Insurance Co. v. Hamilton,* 145 Va. 391, 135 S.E. 21, 25 (1926); *see also Sadler v. Marsden,* 160 Va. 392, 168 S.E. 357, 361 (1933).

But, as *City of Bedford* and *T ... v. T ...* make plain, while fraud may of course be the source of estoppel in a particular case, it is not a necessary element.

ception, ... a representation, reliance, a change of position, and detriment" (*citing United States v. Fidelity and Casualty Co. of New York,* 402 F.2d 893, 898 (4th Cir.1968)).

### III

 Applying Virginia equitable estoppel doctrine, as stated in *City of Bedford* and *T ... v. T ...*, to the statute of limitations plea as here invoked by Barry, we conclude that genuine issues of material fact exist which made summary judgment inappropriate.[7] Specifically, we hold that whether Barry reaffirmed her promise to return the painting after her assertion of ownership in 1978–79, and whether, if she did, the Donnellys reasonably relied upon that reaffirmation in failing to sue within the limitations period are issues requiring resolution by trial.

Accordingly, we vacate the summary judgment entered by the district court and remand for further proceedings consistent with this opinion.[8]

SO ORDERED.

---

7. The district court's concentration on the absence of fraud as the dispositive factor here may well have stemmed from the parties'—including the Donnellys'—concentration on the "fraud" brand of estoppel. *See supra,* note 6. Under the circumstances, we are not disposed, however, to hold the Donnellys to so narrow a theory of equitable estoppel, though their reliance upon it in the district court may well have contributed to the ruling they now attack, and though they have continued that reliance here. *See Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941); *United States v. The Barge Shamrock,* 635 F.2d 1108, 1111 (4th Cir.1980).

8. We reject the Donnellys' more general alternative basis for challenging the district court judg-

ment: that the court erred (or abused discretion) in entertaining a declaratory judgment action brought for the purpose of raising a statute of limitations defense "offensively." While such a use of the procedure might under some circumstances be properly disallowed as a matter of discretion, we cannot declare its allowance here to be legal error or an abuse of discretion. As brought, the action was essentially one to remove a specific cloud on an asserted title to personal property; it threatened no prejudice to third persons nor other resulting inequities of the type that may have justified, if not compelled, its disallowance. *Cf. Weems v. Carter,* 30 F.2d 202, 204 (4th Cir.1929); *Talbott v. Hill,* 261 Fed. 244, 246 (D.C.Cir.1919).