Margie POWLES, Administratrix of the Estate of John Calvin Powles, deceased, Plaintiff,

v.

Barbara Elaine KANDRASIEWICZ and Thomas R. Waters, Defendants.

No. 3:95–mc–3–P.

United States District Court, W.D. North Carolina, Charlotte Division.

May 23, 1995.

J. Douglas Hill, Charlotte, for plaintiff.

Thomas D. Garlitz, Charlotte, for defendants.

## ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on Defendant Barbara Kandrasiewicz's motion, filed January 31, 1995, to cancel the registration and abate all proceedings to collect the February 14, 1979 judgment of the United States District Court for the Southern District of Alabama registered in this Court on January 10, 1995, and to quash the Notice of Petition (or Motion) to Set Off Debtor's Exempt Property. Plaintiff filed a response on February 3, 1995 to which Defendant filed a reply on February 10, 1995.

## BACKGROUND

The original judgment in this matter was entered by the United States District Court for the Southern District of Alabama on February 14, 1979, more than sixteen years ago. That judgment was in favor of the Plaintiff Margie Powles based upon a jury verdict finding Defendants guilty of simple negligence and assessing damages at $50,000. On or about May 15, 1994, Plaintiff's motion to revive the judgment was granted by United States District Court for the Southern District of Alabama. (*See* Plaintiff's Response Brief, Exhibit A).

## LEGAL DISCUSSION

### 1. *Real Party in Interest*

As a preliminary matter, relying on Federal Rule of Civil Procedure 17(b), Defendant asserts that Plaintiff Margie Powles has not qualified as an ancillary administrator of the Estate of John Calvin Powles as required pursuant to North Carolina General Statute § 28A–26–6(a). In support of this argument, Defendant cites to *Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir.), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980), which holds that North Carolina determines the capacity of a party to bring a diversity action for wrongful death under state law in the federal courts of North Carolina and further that a foreign

administrator lacks capacity to prosecute or defend an action without being qualified as an ancillary administrator.

*Davis* clearly represents well settled law that whether "one acting in a representative capacity ... [has the] capacity to sue or be sued shall be determined by the law of the state in which the district court is held...." Fed.R.Civ.P. 17(b). However, the instant registration of judgment does not constitute an action, defined in the legal sense as a lawsuit brought in court, *see Black's Law Dictionary* 28 (Del. 6th ed. 1990), to sue or be sued, defined as commencing or to continue legal proceedings for recovery of a right, *see Black's Law Dictionary* 1432 (Del. 6th ed. 1990), and therefore, neither Federal Rule 17(b) nor N.C.G.S. § 28A–26–6(a) are applicable.

■ Here, the final decision of an authentic and official court of justice upon the respective rights and claims of the parties to an action or suit has been determined. Simply put, the lawsuit has already been brought, resolved and pronounced under the jurisdiction of the Alabama Federal Court. Plaintiff is now simply going through the legal procedure of enforcing that final judgment, not "bringing another lawsuit." The Court believes this holding in no way offends the basic purposes of Rule 17(b) which is to protect the Defendant from subsequent similar actions by one not a party to the original action and ensure that the *judgment will* have proper *res judicata* effect. Furthermore, where as here, there are apparently no federal rights involved, the applicable substantive law for a determination of whether the administratrix was a real party in interest was that of the state in which the district court sat. *White Hall Building Corp. v. Profexray Division of Litton Industries, Inc.*, 387 F.Supp. 1202 (D.C.Pa.1974), *aff'd*, 578 F.2d 1375, 1377 (3rd Cir.1978). Accordingly, the Court concludes that Defendant's arguments on this point are without merit as Plaintiff remains a real party in interest.

■ On this score, Defendant is also precluded at this late date from raising any objections to Plaintiff's real party in interest status in the proceedings below, *see generally, Chicago & Northwestern Transp. Co. v.*

*Negus–Sweenie Inc.*, 549 F.2d 47 (8th Cir. 1977) (On appeal from final judgment, Court held that real party in interest objection should be raised with reasonable promptness in the trial court proceeding), having clearly waived those objections by failing to raise them at trial or on appeal.

### 2. *Timeliness of Registration*

Relying on the Ninth Circuit holding in *Matanuska Valley Lines, Inc. v. Molitor*, 365 F.2d 358 (9th Cir.1966), *cert. denied*, 386 U.S. 914, 87 S.Ct. 864, 17 L.Ed.2d 786 (1967), Defendant argues that the statute of limitations of the forum state, North Carolina, applies in registration proceedings under 28 U.S.C. § 1963 and therefore, registration of the 1979 Alabama judgment is untimely based on North Carolina's 10–year statute of limitations as set forth in N.C.G.S. § 1–47(1).

In response, Plaintiff makes no legal argument but merely asserts that Defendant has failed to "consider that the life of judgments may be extended or even revived under procedures available in the granting state." (*See* Plaintiff's Response Brief, p. 3). Having filed a certified copy of the Order to revive the judgment issued by the United States District Court for the Southern District of Alabama, Plaintiff asserts that the North Carolina statute of limitations has not expired because the "judgment was registered ... less than one year after being revived by the Alabama District Court." (*See* Plaintiff's Response Brief, p. 3).

As framed by the parties the Court believes two issues arise. First, whether under Alabama law a revival of judgment prior to registration under 28 U.S.C. § 1963 creates a "new judgment" for statute of limitations purposes, in which case the judgment creditor believes she would have ten years from the date of revival within which to register or satisfy the judgment. The Court believes that if Plaintiff's proposition is correct, that the May 1994 Order constitutes a new judgment, then no statute of limitations problems exist in either state.

However, if revival does not constitute a new judgment, the second issue arises, namely, which state statute of limitations is appli-

cable, given that the statute of limitations in Alabama (the rendering or issuing state) is twenty years while in North Carolina (the enforcing or forum state) it is only ten years.

## A. Impact of Reviving the Alabama Judgment

The Court has carefully reviewed the small body of Alabama law which addresses the revival judgment statute and finds two cases, *Littlefield v. Cupps*, 371 So.2d 51 (Ala.Civ. App.1979) and *Eatman v. Goodson*, 58 So.2d 129, 36 Ala.App. 360 (1951), to be instructive on the scope and purpose of that statute.

In *Littlefield*, a case deciding which of two statutes was applicable under Alabama law, (the survival statute, § 6–5–462, or the revival of judgment statute § 6–9–194), the Alabama Court of Civil Appeals concisely set out the provisions of the judgment revival statute.

Section 6–9–190 provides that a judgment cannot be revived after twenty years from its entry. Section 6–9–191 provides for presumption of satisfaction of a judgment if ten years have elapsed since its entry or since the date of the issuance of the last execution. Section 6–9–192 bars issuance of an execution on a judgment on which no execution has been sued out within ten years of its entry until there has been a revivor under the rules of procedure (formerly a *writ of scire facias* now motion to revive under Rule 81(3), Alaska Rules of Civil Procedure).

*Littlefield v. Cupps*, 371 So.2d at 52–53. The whole of Article 8 of Chapter 9 in Title 6 of the 1975 Code "applies only to reviving for the purpose of securing execution of a final judgment upon which no execution was previously issued for a period of ten years." *Id.* at 53. In simple terms, the statute provides that the limitations period on a judgment is twenty years after which the judgment is not revivable and therefore unenforceable at law. Furthermore, the judgment is presumed satisfied after ten years and, if it is not, the judgment creditor must move the court for a revivor in order to enforce the judgment. Clearly the purpose of the revivor motion is to overcome the presumption of satisfaction

and thereby allow the judgment creditor to enforce the judgment.

The *Eatman* Court added that

The office of scire facias [common law predecessor to the revival statute] to revive a judgment is *not to seek a new judgment* for debt, but the purpose of the proceeding is to revitalize a dormant judgment so as to enable the creditor to enforce by execution the judgment he has already obtained. *Quill v. Carolina Portland Cement Co.*, 220 Ala. 134, 124 So. 305 (citations omitted)

*Eatman v. Goodson*, 58 So.2d at 131, 36 Ala.App. at 362 (emphasis added); *see also* Ala.Code Ann. § 6–2–32 *and Second Nat'l Bank v. Allgood*, 234 Ala. 654, 176 So. 363 (1937) (Garnishment based on judgment more than 20 years old held dismissible on grounds that presumption of payment is conclusive after 20 years, notwithstanding judgment was revived within six years and before judgment had become 20 years old ... after 20 years there was no judgment in existence).

Here, the 1979 judgment was dormant, wherein the time in the jurisdiction of rendition (Alabama) had run as to the writ of execution but not as to the judgment, until revived in May, 1994. *See Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union*, 128 F.Supp. 697, 701 (D. Hawaii 1955) (defining "live", "dormant", and "dead" judgments). This Court concludes that the revival of the February, 1979 Order in May, 1994 is clearly not the same as a new judgment.

The statute of limitations on the Alabama judgment remains twenty years notwithstanding the revival, were it otherwise, i.e. were it to constitute a new judgment, another twenty year period would begin to run from the date of revival. In light of the cases cited above, and in the absence of any indications of differing intent from the Alabama legislature, this Court must conclude that the revival statutes are limited to their plain meaning and avowed purpose which is to enable the judgment creditors to enforce by execution the judgment they have already obtained. Accordingly, this Court finds that the Plaintiff's revival of the 1979 judgment is

of little moment with respect to the more significant issue in this case, the determination of which state's limitation period applies in this 28 U.S.C. § 1963 proceeding.

**B.** *Applicable law and the statute of limitations*

So, the Court moves to the second issue concerning the 1979 Alabama judgment, which although dormant for nearly sixteen years, is now viable, enforceable and within the twenty-year statute of limitations under Alabama law. Despite its viability in Alabama, there can be no dispute that the limitations period for enforcement of a foreign judgment issued in 1979 has run under North Carolina law. Accordingly, the Court must decide in the context of 28 U.S.C. § 1963 and Rule 69(a) which state law applies in this case.

Title 28 U.S.C. § 1963 governs the registration of a judgment and provides in pertinent part that

> A judgment in an action for the recovery of money or property entered in any district court ... may be registered by filing a certified copy of such judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

28 U.S.C. § 1963.

Rule 69(a) governs execution proceedings and provides in pertinent part that

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held,* existing at the time the remedy is sought, except that any statute of the United States governs to the extent that *it is applicable.* (emphasis added).

Fed.R.Civ.P. 69(a) (West 1995).

As set out by the District Court in *Juneau v. Couvillion,* 148 F.R.D. 558, 560 (W.D.La. 1993), the purpose of § 1963 is to

"assist[ ] judgment creditors by making it possible for them to pursue the property of a debtor in satisfaction of a judgment by the ordinary process of levying execution on a judgment in any district where the judgment is registered." S.Rep. No. 1917, 83rd Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.A.A.N. 3142.

A judgment registered pursuant to 28 U.S.C. § 1963 has "the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Thus while § 1963 contains no provision restricting the time within which a judgment may be registered or a judgment so registered may be enforced, it has been held that both registration and enforcement may be time-barred by the laws of the state of registration. (citations omitted).

As noted by the *Couvillion* Court, only a handful of courts have addressed the interplay between § 1963 registration and state statutes of limitation.

The first case mentioned by the District Court in *Couvillion* and also mentioned by the *Matanuska* Court is *Stanford v. Utley,* 341 F.2d 265 (8th Cir.1965). In *Stanford,*

> the Eighth Circuit held that where enforcement proceedings were brought within the registration state's (Missouri's) ten-year limitation, enforcement was not time-barred even though it would have been barred in the state of issuance (Mississippi).

*Juneau v. Couvillion,* 148 F.R.D. at 560, citing *Stanford v. Utley,* 341 F.2d at 268. As in *Couvillion,* the Court believes the *Stanford* decision is conspicuously inapposite on its facts. It is easily distinguished from the case at bar because the judgment was registered prior to the running of the rendering state's (Mississippi) statute of limitations and enforcement was sought prior to the running of the registered state's (Missouri) limitation.

Digressing for a moment, a portion of the *Stanford* decision might be construed to have some applicability here. In *Stanford,* looking to the law of the forum or registration state,

the Eighth Circuit Court found such an extension of the limitations to be acceptable by treating the registered judgment as the equivalent of a new judgment so far as enforcement is concerned, provided it was otherwise proper. In *Stanford* the judgment was otherwise proper because it had been registered before the limitations ran in either the rendering state or the registration state. As noted above, this conclusion is inapposite here as the registration state's limitations period has run.

Nonetheless, this Court agrees, in part, with the holding in *Stanford* limited as it is to its facts, that "timely registration opens the way to enforcement procedure in the registration court." *Stanford* at 269; *Couvillion,* at 560. Here, had Plaintiff properly registered her judgment in North Carolina prior to the expiration of the North Carolina limitation, she would then have had up to ten years from the original judgment within which to enforce that judgment.

The Court does not agree, however, with the proposition put forth in *Stanford* which would treat the registration as a "new judgment" and start the running of the statute anew. As a practical, matter, if the Court were to accept Plaintiff's position the expressed language of the North Carolina statute would be nullified as a judgment creditor could, for example, register the judgment in North Carolina in the ninth year and then have ten additional years within which to execute that judgment (resulting in a nineteen year period from the date of rendition) or if a judgment creditor from Alabama is involved, he could wait nearly twenty years until reviving the judgment in accordance with Ala.Code §§ 6–9–190 et seq., register the judgment in North Carolina, and then have an additional ten years within which to execute that judgment (resulting in a twenty-nine year period from the date of rendition). Such a result is repugnant to the laws of both states. In any event, in either case, it is clearly more than ten years from the "date of rendition" and is therefore violative of the North Carolina limitations statute.

■ More importantly, in this case Plaintiff did not register the judgment prior to the running of the registration state's limitation,

therefore the registration is not "otherwise proper" as required by *Stanford.* Here then, as in *Matanuska,* the only question remaining is whether Plaintiff's sixteen-year old Alabama judgment is registerable in a federal court sitting in North Carolina and, for the reasons provided below, this Court finds that it is not.

The leading case on this issue is *Matanuska, supra,* which essentially stands for the proposition that if a judgment is registered in a district court in another state, such judgment shall be enforced in conformity with the law of the state where the judgment is registered. *See* 7–Part 2 *Moore's Federal Practice* ¶ 69.04[3] (1994).

In *Matanuska* the Ninth Circuit held that a judgment obtained in district court in Alaska, where a judgment is a lien for ten years, could not be enforced in Washington (where it was registered) in the ninth year because a Washington statute provided that no foreign judgment may be registered or enforced in Washington more than six years from the time it was entered. The Ninth Circuit held that this enforcement provision barred registration of the Alaskan judgment even though it was still enforceable in Alaska. *Id.* at 359–360.

In reaching this conclusion the *Matanuska* Court first noted that

It has long been established that the enforcement of a judgment of a sister state may be barred by application of the statute of limitations of the forum state. *McElmoyle for Use of Bailey v. Cohen,* 13 Pet. 312, 38 U.S. 312, 327, 10 L.Ed. 177.

*Id.* at 360.

Next, the Ninth Circuit applied the doctrine set forth in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), to conclude that the forum state's conflict of law rules apply, resulting in the use of Washington state's statutes of limitation which expressly limit actions on foreign judgment or registration to six years.

Furthermore, in anticipation of an argument that *Klaxon* is inapplicable in a case,

like this one, wherein jurisdiction is based upon 28 U.S.C. § 1963 rather than diversity of citizenship, the Court pointed out that "§ 1963 gives no indication that Congress intended that the statute of limitations of the state of registration should be ignored, nor is there any such indication in the act's legislative history." *Matanuska Valley Lines, Inc. v. Molitor*, 365 F.2d at 360.

This Court has applied similar logic in the recent past, in *Stokes v. Southeast Hotel Properties, Ltd.*, 877 F.Supp. 986, 994 (W.D.N.C.1994) holding that

> in deciding what substantive law applies, one must first look to the forum state's choice of law statute. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975); *see also*, The Rules of Decision Act, 28 U.S.C. § 1652 (1966). A federal court hearing a diversity action applies the statute of limitations which would be applied by a court of the forum state, even when the action is brought under the law of a different state. *Dow Chemical Corp. v. Weevil–Cide Co., Inc.*, 897 F.2d 481, 484 (10th Cir.1990), *citing Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). The legal logic behind the rule is simple. Because statutes of limitation are deemed to affect only the remedy and not the substantive right, they are deemed procedural for choice of law purposes. As a result, the governing statute is usually that of the forum where the remedy is sought and not the statute of the place where the action arose. As a further consequence the statute of the forum may bar the remedy even though the action is not barred in the jurisdiction where it arose.

Applying these principles, this Court in *Stokes* looked to the Fourth Circuit's opinion in *Barry v. Donnelly*, 781 F.2d 1040 (4th Cir.1986), analyzing Virginia's conflicts of laws rules, which held that

> Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the district court was bound to apply the conflicts of laws rules of the jurisdiction in which it sat, here Virginia. In that state, questions concerning statutes of limitations are deemed to be procedural and as such are controlled by the law of the forum. (citation omitted).

*Barry v. Donnelly*, 781 F.2d at 1042. This Court then concluded that "because the forum state, North Carolina, deems its statutes of limitations to be procedural, this Court must treat them as such and apply them in this case." *Stokes v. Southeast Hotel Properties, Ltd.*, 877 F.Supp. at 996.

The *Matanuska* Court also mentioned the Hawaiian District Court decision in *Juneau Spruce, supra*, and recognized that that decision

> contained statements to the effect that a judgment to be registerable must be valid and alive in the jurisdiction of origin. These statements are responsive to the issue there involved—whether the judgment was incapable of registration due to the limitations statutes of the rendering state. In our case we have the different issue of whether the judgment was incapable of registration due to the limitations statutes of the registration state.

*Matanuska Valley Lines, Inc. v. Molitor*, 365 F.2d at 360–61.

In the present circumstance then the *Juneau Spruce* decision is not on point. This Court does not disagree with *Juneau Spruce* to the extent that it holds a judgment that is either "live" or "dormant" is still valid and subsisting in the rendering state and *may* therefore be registered in the registering state, provided that it is "otherwise proper," i.e, within the registering state's statute of limitations. The holding in *Juneau Spruce* does nothing more than eliminate the possibility that a "dead" judgment in a rendering state with a shorter limitations period could be registered and enforced after the rendering state's statute has run in another state with a longer limitations period. Clearly, the judgment must first be valid and enforceable in the rendering state. This Court simply adds, in accord with *Matanuska*, that in addition to viability in the rendering state, the

judgment must also pass muster under the registering state's limitations law.[1]

Having decided that the forum state's law is applicable the Court must now look to North Carolina law. Section 1–47(1) "fixes the current period of ten years as that which terminates the lien of judgment, and operates as a bar to a new action upon it." *See McDonald v. Dickson,* 85 N.C. 248 (1881), *aff'd on rehearing,* 87 N.C. 404 (1882). Such a statute as the statute of limitations should be strictly construed and is a complete bar to a motion for leave to issue execution of a judgment, when such motion is made more than ten years after the rendition of such judgment. *Id.*

Furthermore, this statute is applicable to foreign judgments, *see Arrington v. Arrington,* 127 N.C. 190, 197, 37 S.E. 212, 214 (1900), because, as noted above, North Carolina applies the *lex fori* in an action in this state on a judgment obtained in another state. *Id.* Accordingly, the Court concludes that even though the present judgment has an effective life of twenty years under Alabama law, the ten-year statute of limitations imposed by North Carolina law bars Plaintiff from enforcing such judgment in this state.

**NOW, THEREFORE, IT IS ORDERED** that Defendant's motion to cancel the registration and abate all proceedings to collect the February 14, 1979 judgment of the United States District Court for the Southern District of Alabama registered in this Court on January 10, 1995, and to quash the Notice of Petition (or Motion) to Set Off Debtor's Exempt Property be, and hereby is, **GRANTED.**

---

1. *Juneau Spruce* is further distinguishable from the case at bar in that the Alaskan revival statute was deemed to be perfunctory and could not be denied in the discretion of the Court. Such is not the case for the Alabama statute at issue here, *see Gambill v. Cassimus,* 247 Ala. 176, 22 So.2d 909 (1945), *quoting Mutual Life Ins. Co. v. Maddox,* 221 Ala. 292, 128 So. 383 (1930) (holding that the presumption [of satisfaction] is not merely an administrative one having only the office of shifting the burden of proceeding with the evidence. This statutory presumption is evidentiary in nature and is "not merely a technical incident of the trial wrought for administrative purposes."); *see also* Ala. Code Ann. 6–9–191 (1975).