**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1344**

ALFRED L. SNAPP, JR.; BETTY V. SNAPP; SHARON K. SNAPP,

Plaintiffs - Appellants,

v.

LINCOLN FINANCIAL SECURITIES CORPORATION; RIVERSOURCE DISTRIBUTORS, INC.; RIVERSOURCE LIFE INSURANCE COMPANY,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. Elizabeth Kay Dillon, District Judge. (5:17-cv-00059-EKD)

Argued: March 21, 2019                                Decided: April 16, 2019

Before FLOYD, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** W. Scott Greco, GRECO & GRECO, PC, McLean, Virginia, for Appellants. William E. Mahoney, Jr., STRADLEY RONON STEVENS & YOUNG, LLP, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Jeffrey E. McFadden, STRADLEY RONON STEVENS & YOUNG, LLP, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A retired couple and their daughter-in-law brought this action alleging that they were fraudulently induced to purchase financial products by a representative of the Lincoln Financial Securities Corporation. According to the plaintiffs, Lincoln's representative falsely assured them that the products, known as variable annuities, would pay out a death benefit equal to the amount they invested, when in fact, their financial statements showed that their death benefits were declining while the annuities paid a monthly income. Because the plaintiffs did not file their action until many years after they began to receive such statements, the district court dismissed the case as time-barred. We agree and affirm the district court's judgment.

In 2007, plaintiffs Alfred and Betty Snapp, a retired couple living in Virginia, met with Randy Watts, a locally-based Lincoln representative who was authorized to sell annuities from the RiverSource Life Insurance Company. According to the Snapps' complaint, Watts advised the couple to place their retirement savings into a RiverSource variable annuity. Watts allegedly promised the couple that they would receive a monthly disbursement of $2,150 for the rest of their lives, with the couple's full investment amount to be paid out as a death benefit when one of them died. The couple followed Watts's advice and placed approximately $350,000 into a RiverSource variable annuity.

The next year, in 2008, the couple's daughter-in-law, Sharon Snapp, also purchased a RiverSource variable annuity from Watts based on similar assurances. She, too, allegedly was advised by Watts that the annuity would provide a monthly stipend for

2

the rest of her life – in her case, $1,400 – and that her estate would receive a death benefit equaling the amount of money that she placed into the annuity, which was about $265,000.

But Watts's alleged assurances about the permanence of the Snapps' death benefits were false. Shortly after purchasing their annuities, the Snapps began to receive quarterly financial statements from RiverSource showing that the value of their death benefits was declining as they were paid monthly disbursements. The Snapps noticed this discrepancy, and "would often question [] Watts about statements received showing a reduction in the annuity's value." J.A. 19. In response, "Watts repeatedly assured [them] that their death benefit was still secure and it would not drop below the original amount invested." *Id.*

The Snapps do not allege that they consulted with anyone other than Watts about the discrepancies they identified between their financial statements and Watts's original promises and later assurances. At some point around 2009, Betty Snapp did call RiverSource's toll-free number regarding her concerns, but did not inquire further after "[t]he customer service representative she spoke to told her to call [Watts] to explain it to her." J.A. 261. The Snapps "believed [Watts's assurances] to be true," according to the complaint, and therefore did not take further action. J.A. 19.

The Snapps allege that they did not discover the true nature of their annuities until late in 2015, after Watts, under investigation for defrauding other customers, allegedly

3

committed suicide. The Snapps then spoke with Watts's colleague and "found out for the first time that [Watts's] statements about the death benefit were not true." J.A. 19–20.

On April 18, 2016, the Snapps commenced a FINRA arbitration proceeding against Lincoln and RiverSource, which was dismissed as untimely under the arbitration body's six-year limitations period.[1] The Snapps subsequently commenced this court action, asserting statutory securities fraud violations and multiple claims under Virginia common law. The defendants again moved to dismiss the case as time-barred, pointing to the lapse of time between Watts's alleged point-of-sale misrepresentations in 2007 and 2008 and the Snapps' 2016 commencement of legal action.[2] In response, the Snapps argued that Watts's misrepresentations prevented them from discovering the fraud before Watts's suicide in 2015, and that the relevant statutes of limitations should be tolled as a result. In a carefully reasoned opinion, the district court agreed with the defendants and granted their motion to dismiss.

---

[1] FINRA – the Financial Industry Regulatory Authority – is a private self-regulatory organization that regulates certain aspects of the securities industry. Under FINRA's arbitration rules, the dismissal of the Snapps' arbitration action was without prejudice to a later court action.

[2] FINRA's rules provide for the tolling of otherwise applicable statutes of limitations while arbitration is pursued. The parties thus agree that April 18, 2016, the day on which the Snapps commenced their arbitration action, should be treated as the operative date on which their claims were asserted for statute-of-limitations purposes. We may proceed on that assumption, as the result in this case does not depend on whether the operative date is April 18, 2016, or instead May 17, 2017, when the Snapps filed their court complaint.

4

The court began with the Snapps' securities fraud claims under the Virginia Securities Act and the federal Securities Exchange Act of 1934. Under those statutes, the court explained, the time for filing a claim begins to run on the date of the transaction – here, the Snapps' 2007 and 2008 annuities purchases. It is then subject to an "absolute cutoff," J.A. 267 (internal quotation marks omitted) – five years for the federal statute, and two years for the state statute – which would have passed before the Snapps commenced legal action. Under well-established precedent, the court continued, those two- and five-year periods are statutes of repose, not statutes of limitations, which means that they are not subject to equitable tolling. *See* J.A. 267–68 (citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010) (Securities Exchange Act of 1934); *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1305–06 (4th Cir. 1993) (Virginia Securities Act)).

The court turned next to the Snapps' common-law fraud claims. Those claims are subject to a two-year statute of limitations, *see* Va. Code Ann. § 8.01-243(A), which begins to run under Virginia's discovery rule when the "fraud . . . is discovered or by the exercise of due diligence reasonably should have been discovered," *id.* § 8.01-249(1). The court's application of that rule turned on one critical finding: Given multiple financial statements consistently contradicting Watts's promises and showing a reduction in the value of their death benefits, the Snapps reasonably should have discovered Watts's misrepresentations well before April of 2014. As the court explained, by November of 2009, "every quarterly and annual statement that the Snapps received from RiverSource directly contradicted Watts's representations that the value would never

5

decline below the initial investment and that the annuities would pay out as a death benefit an amount equal to their initial investment." J.A. 271. Moreover, the Snapps' own complaint demonstrated that they understood the financial statements in exactly that way, as it alleges that they repeatedly questioned Watts about the apparent contradiction. Provided with this "actual notice" that Watts's promises were going unfulfilled, the court concluded, a "reasonable person" exercising due diligence would have discovered the alleged fraud before April of 2014 – and as a result, the two-year limitations period expired before April of 2016, when the Snapps finally asserted their legal claim. *Id.*

For the same fundamental reason, the court went on to reject the Snapps' argument for equitable tolling of the limitations period. Pointing to Watts's continued assurances in the face of their questions, the Snapps relied on two equitable doctrines in support of tolling: the doctrine of fraudulent concealment, *see* Va. Code Ann. § 8.01-229(D), which tolls a limitations period when a defendant uses a "trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence," *Newman v. Walker*, 618 S.E.2d 336, 338 (Va. 2005) (internal quotation marks omitted); and equitable estoppel, which operates to toll a limitations period when "the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire," *Barry v. Donnelly*, 781 F.2d 1040, 1042 (4th Cir. 1986) (internal quotation marks omitted). But as the district court explained, those doctrines – like the discovery rule itself – require a plaintiff to exercise ordinary diligence, and allow for reliance on a defendant's representations only when reasonable. And here, the court

6

determined, given the regular financial statements contradicting Watts's assurances –

"evidence that clearly and overwhelmingly indicate[d] [Watts's] assurances . . . would

not be upheld," J.A. 273 (alterations in original) (quoting *Gitter v. Cardiac & Thoracic*

*Surgical Assocs., Ltd.*, 419 F. App'x 365, 370 (4th Cir. 2011)) – reasonable diligence

required the Snapps to do more than speak with Watts. Nothing that Watts is alleged to

have done, the court reasoned, "directly or indirectly prevented [the Snapps] from

receiving their annuity statements, from reviewing their annuity statements, or from

discussing the contradictions with anyone else in order to reconcile the annuity

statements with [Watts's] representations." J.A. 274.[3]

Finally, the court determined that the Snapps' other common-law claims – for

negligence, breach of fiduciary duty, and breach of contract – also were time-barred.

Those claims, the district court noted, are not subject to a discovery rule under Virginia

law, and so accrued at around the time of the 2007 and 2008 transactions in question –

which meant that the limitations periods, ranging from two to five years, expired well

---

[3] Relying on a different theory, the Snapps also sought tolling under Virginia's "continuing undertaking" doctrine, which tolls a statute of limitations during "a continuous or recurring course of professional services related to a particular undertaking." *Harris v. K & K Ins. Agency, Inc.*, 453 S.E.2d 284, 286 (Va. 1995). As the district court explained, that doctrine would apply only if the Snapps' annuities purchases in 2007 and 2008 were not discrete transactions but instead required Watts's continued services as a financial advisor. Because the Snapps had failed to allege that their transactions required a "continuation of [Watts's] services," the district court concluded, the continuing undertaking doctrine did not apply. J.A. 275 (internal quotation marks omitted).

before 2016. The Snapps conceded that the general rule would render their claims untimely, but argued again for application of equitable tolling to save their claims. Citing the reasons it already had given, the district court rejected those arguments, finding no basis for tolling of the relevant limitations periods.[4]

The Snapps timely appealed, contending that the district court erred in dismissing their claims and raising substantially the same arguments they advanced in the district court. We review de novo the district court's dismissal of the complaint as time-barred, including the court's rejection of equitable tolling. *See Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018). Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the sound reasoning of the district court.

*AFFIRMED*

---

[4] In the alternative, the district court also found that the Snapps had failed to state a claim for negligence or breach of contract. Because we agree with the district court that these claims are time-barred, we need not address their merits.