**CITY OF BEDFORD, Appellant,**

v.

**The JAMES LEFFEL & CO., Appellee.**

**No. 76–2291.**

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1977.

Decided June 30, 1977.

Philip L. Chabot, Jr., Washington, D. C. (Northcutt Ely, Washington, D. C., on brief), and Roy B. Thorpe, Jr., for appellant.

Joseph A. Matthews, Jr., and Ronald M. Ayers, Roanoke, Va. (Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief), for appellee.

Before RUSSELL, Circuit Judge, FIELD, Senior Circuit Judge, and WIDENER, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

In this diversity contract action, plaintiff, the City of Bedford, Virginia, appeals from the district court's order, entered on defendant's motion for summary judgment, holding that its claim is barred by the Virginia Uniform Commercial Code's four-year statute of limitations. For the reasons which follow, we vacate the entry of summary judgment and remand for further proceedings.

## I

In late 1967 and early 1968, defendant, James Leffel & Co., agreed to design, manufacture and install replacement turbines in generator units No. 2 and No. 3 at plaintiff's Snowden, Virginia hydroelectric plant.[1] Installation of these turbines was completed in April, 1969.[2]

Upon being placed into service, the turbine in unit No. 2 failed to perform satisfactorily; and, in November, 1972, it was discovered that the turbine in unit No. 3, which had appeared to be operating properly, was physically deteriorating. From the advent of these problems until March, 1975, defendant recommended and participated in various remedial measures.[3] These repair efforts were unsuccessful and plaintiff commenced this action on August 25, 1974,[4] alleging breach of contract and warranties of merchantability and fitness for a particular use.[5]

On defendant's motion for summary judgment, the district court held that the action was barred by Va.Code Ann. § 8.2–725[6] (UCC § 2–725) which, in pertinent part, provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

\*    \*    \*    \*    \*    \*

(4) This section does not alter the law on tolling of the statute of limitations.

. . .

The court reasoned that, under Section 8.2–725(2), the period of limitations ran from the installation of the turbines in 1969 and, consequently, expired in 1973, two years before suit was filed. It rejected plaintiff's contention that defendant's repair efforts had estopped it from pleading the statute of limitations as a defense.

Plaintiff now renews that contention before this court.

## II

The four-year period prescribed by Section 8.2–725 is expressly subject to the law on tolling of the statute of limitations.[7] However, none of the Virginia tolling statutes[8] is applicable to this case, and Virginia apparently does not recognize any non-statutory basis for "tolling" the statute.[9] *See Quackenbush v. Isley* (1930) 154 Va. 407, 153 S.E. 818.

But Virginia does recognize that the doctrine of equitable estoppel may pre-

---

1. The contract for unit No. 2 was formed in September, 1967. The contract for unit No. 3 was formed in May, 1968.

2. Installation of the turbine in unit No. 2 was completed in January, 1969 and installation of the turbine in unit No. 3 was completed in April, 1969.

3. The record before the district court on defendant's motion for summary judgment contained voluminous correspondence between the parties concerning these repair efforts.

4. The suit was originally filed in the Circuit Court of Bedford County, Virginia. Defendant subsequently had it removed to federal court.

5. As relief, plaintiff sought $500,000.00 compensatory damages for the cost of buying electricity to replace lost production, expenses incurred in trying to correct the problems with the turbines and the anticipated cost of replacing the turbines.

6. The district court properly concluded that, contrary to defendant's contention, Va.Code Ann. § 8–24.2 (as it read prior to its 1973 amendment) is not applicable to this case.

7. Va.Code Ann. § 8.2–725(4), quoted above.

8. Va.Code Ann. §§ 8–30 through 8–34.

9. *Cf. Neal v. LaClede Gas Company* (Mo.App. 1974) 517 S.W.2d 716, holding that a vendor's repair efforts did not toll the statute of limitations in view of Missouri's policy against non-statutory basis for tolling.

clude a defendant from raising expiration of the period of limitations as a defense. *E. g., Wilson v. Butt* (1937) 168 Va. 259, 190 S.E. 260 and *Sadler v. Marsden* (1933) 160 Va. 392, 168 S.E. 357. That doctrine has been described as "a standard of fair dealing applied by the courts."[10] As applied to the statute of limitations, its central premise is that

> one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute [of limitations], and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.[11]

The doctrine is, of course, most clearly applicable where the aggrieved party's delay in bringing suit was caused by his opponent's intentional misrepresentation;[12] but deceit is not an essential element of estoppel. *T . . . v. T . . .* (1976) 216 Va. 867, 224 S.E.2d 148, 152, citing *United States v. Fidelity and Casualty Co. of New York* (4th Cir. 1986) 402 F.2d 893, 898. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire. *See, e. g., T . . . v. T . . ., supra; United States v. Fidelity and Casualty Co. of New York, supra* at 897–98; *Bergeron v. Mansour* (1st Cir. 1945) 152 F.2d 27, 30–31; *id.* at 33 (concurring opinion of Magruder, J.); and *Howard v. West Jersey & S. S. R. Co., supra.*

While the Virginia courts have not considered the question, it seems clear that the principle of estoppel may be applicable where a vendor claims that defects in non-complying goods can be corrected and attempts to do so. *Nowell v. Great Atlantic & Pacific Tea Company* (1959) 250 N.C. 575, 108 S.E.2d 889, and *Styron v. Loman-Garrett Supply Company* (1969) 6 N.C.App. 675, 171 S.E.2d 41. This follows because such conduct may lead the injured party to reasonably believe that it will receive satisfaction without resort to litigation. *Cf. de la Houssaye v. Star Chrysler, Inc.* (La.App. 1973) 284 So.2d 63; *Zahler v. Star Steel Supply Company,* (1973) 50 Mich.App. 386, 213 N.W.2d 269, 271–72 (dissenting opinion); *Southern California Enterprises v. D. N. & E. Walter & Co.* (1947) 78 Cal.App.2d 750, 178 P.2d 785; *and Louisville Silo & Tank Co. v. Thweatt* (1927) 174 Ark. 437, 295 S.W. 710.[13]

■ Defendant contends, however, that its conduct in this case could not have misled plaintiff because it gave no express assurances that the problems would ever be corrected. But one may be misled as much by implication as by express statement, and the record demonstrates that defendant coupled its remedial efforts with comments calculated to induce plaintiff to refrain from bringing suit. Thus, on June 30, 1969, Mr. Groff, defendant's president and general manager, wrote: "we have never done business with finer people than you folks— or more cooperative—and keeping this spirit we certainly want to work this out to your very best possible advantage."[14] And

---

**10.** *Delson v. Minoque* (E.D.N.Y.1961) 190 F.Supp. 935, 937.

**11.** *Howard v. West Jersey & S. S. R. Co.* (1928) 102 N.J.Eq. 517, 141 A. 755, 757–58, aff'd. mem. 104 N.J.Eq. 201, 144 A. 919 (1929).

**12.** *E. g., Sadler v. Marsden, supra.*

**13.** While the authorities cited deal with "tolling" of the statute of limitations, their reasoning is clearly based on notions of estoppel. *See, e. g., Zahler v. Star Steel Supply Company, supra,* 50 Mich.App. 386, 213 N.W.2d 269 at 272:

> The seller should not be permitted to lull a buyer into inaction by assurances that his merchandise will be repaired, and at the same time claim the benefit of the running of the statute of limitations.

**14.** In the same vein, Mr. Sahle, defendant's chief engineer, wrote on June 5, 1973, that "[W]e will do our utmost to help you in reference to the problem you are having." And, on November 21, 1973, Mr. Groff wrote, "we are not doing anything more than trying to find the root of the trouble . . . We want you happy and satisfied, and everything going good."

Defendant correctly observes that these and subsequent representations postdated the end of the four-year limitations period and, thus, could not have induced plaintiff to allow that period to expire. We think, however, that, the post-April, 1973, representations merely re-

on July 28, 1969, a letter from Mr. Groff acknowledged that "[w]e do have a problem together" and requested that plaintiff "[p]lease bear with us as we are trying earnestly to be helpful and work this out to the good of all concerned." Similarly, in a memorandum dated December 11, 1973, Mr. Groff stated: "We conclude with the feeling that mutual consideration and forebearance is what we have tried to exhibit and will continue to do. We are sure we can expect the same on your part." On December 16, 1974, Mr. Groff, responding to a threat of litigation, wrote:

> Now legalities will not settle a matter like this—it is a question of mechanical stability, and proper adjustment . . [I]t is a matter of segregating out possibilities of trouble, and seeing if they cannot be cured. It shoud [sic] be well known that Leffel turbines of this type are installed in all parts of the country, . . . and this wheel is no exception other than getting it properly adjusted and oriented into position.
>
> Your threat of litigation is not good common sense, that will not cure anything, . . .

. . . [A] company cannot be in business as we have—and the length of time we have, . . . and not make good with their equipment . . . So we have something, and it is just a question geared up together.[15]

■ Clearly, the implication of these various statements was that defendant would eventually locate and eliminate the source of the problems with the turbines. Consequently, defendant cannot complain if plaintiff, relying on such statements, delayed the commencement of litigation for a reasonable time to allow it to do so.[16] While the case may appear differently after discovery and a full hearing, the present record does not disclose admitted or otherwise established facts which conclusively refute plaintiff's assertion that it did, in fact, act in reliance on defendant's words and conduct; nor does it reveal undisputed facts which conclusively establish that such reliance was unreasonable either *ab initio* or in duration.[17] Therefore, defendant's motion for summary judgment should have been denied.[18] *Longo v. Pittsburgh and*

peated (perhaps more emphatically and explicitly) that which had been implicit in earlier letters. In any event, those representations are clearly relevant to the reasonableness of plaintiff's delay during the period from June 1973 until August 1975 when suit was filed.

15. In a follow-up letter dated December 24, 1974, Mr. Groff stated:

> We do hope this can be worked out, and believe it can; because we believe altimate [sic] justice and truth lies [sic] in this whole situation. It's just a matter of getting things together and properly orient it [sic]. This is what we have been trying to do and would be glad to have your comment on the above [proposed remedial measures] in the same spirit of amicable attempt that we are trying to display. We have seen enough of the nonresults of war in the world today and it hasn't solved anything. Now certainly a thing like this can have some solution if we all put our shoulders to the wheel. We invite that to be done.

16. *See Nowell v. Great Atlantic & Pacific Tea Company, supra,* 108 S.E.2d at 891:

> The appellant, by its promises, invited the delay and should not complain that the invitation was accepted.

17. The district court stressed the fact that plaintiff was, at all relevant times, represented by counsel. However, plaintiff contends that it was misled on a matter of engineering and not on a matter of law. Consequently, as lawyers have no special expertise in engineering, we think that, in this case, the presence of counsel is of little relevance in determining whether plaintiff reasonably relied on the words and conduct of defendant. *United States v. Fidelity and Casualty Co. of New York, supra,* 899–900.

18. Our conclusion that this may be a proper case for application of the doctrine of equitable estoppel is bolstered by the fact that such application would in no way frustrate the purpose of the statute of limitations. "Statutes of limitation are statutes of repose . . . designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost . . . ." *Street v. Consumers Mining Corporation,* (1946) 185 Va. 561, 575, 39 S.E.2d 271, 277. A four-year period and "time of breach" rule of UCC § 2–725 were designed "to fix a reasonable time after which merchants and manufacturers could destroy their records with respect to the manufacture and sale of an item without fear of being unable to defend against liabilities subsequently

*Lake Erie Railroad Co., N. Y. C. Sys.* (3rd Cir. 1966) 355 F.2d 443, 445. ·

### CONCLUSION

For the reasons stated, the entry of summary judgment is vacated and the case is remanded for further proceedings consistent with this opinion.

asserted." *Engelman v. Eastern Light Co., Inc.* (1962) 30 Pa.D. & C.2d 38, 1 UCC Rep. 187, 192. *See* UCC § 2–725, Draftsmen's Comment. However, where an item fails to perform satisfactorily immediately after the sale and the parties engage in extensive and continuing efforts to correct the malfunction, it is unlikely that the pertinent records will be destroyed. Certainly the vendor in such cases cannot claim to have been unfairly surprised when the buyer files suit after it becomes clear that the repair efforts will not succeed.

Our conclusion is also reinforced by the belief that refusal to apply the doctrine in cases such as this may encourage premature resort to the courts. Where, as here, a product has been specially designed to meet the buyer's requirements, "start-up" problems are more likely than with more standardized goods. In most cases the manufacturer can correct such problems if given an opportunity to do so. However, a rule that the period of limitations runs from the date of delivery regardless of any repair efforts by the seller would tend to discourage the buyer from providing him that opportunity. In this day of crowded court dockets, *reasonable* patience should be encouraged in such cases, not discouraged.