# CIRCUIT COURT OF THE CITY OF RICHMOND

Jason Timothy Ferguson, etc.

v.

W. Kenneth Blaylock et al.

February 26, 1997

Case No. LA-955-1

BY JUDGE MELVIN R. HUGHES, JR.

This is a medical malpractice action brought by an infant with the infant's mother as next friend. Originally, eight defendants were named.[1] Two defendants, W. Kenneth Blaylock, M.D., and James W. Patterson, M.D., have filed a Special Plea of the Statute of Limitations. At a hearing on the Special Plea plaintiffs moved to nonsuit Dr. Blaylock. So, the hearing proceeded as to Dr. Patterson on the issue. Plaintiff opposes the Special Plea asserting that the action was timely filed. Alternatively, plaintiff asserts that, even if the court finds the statute of limitation bars the claim, he can go forward because defendants are estopped from asserting the statute of limitations.

For the reasons that follow the court finds that the action is time barred and that estoppel does not apply to prevent defendant from asserting this defense.

### Facts

For purposes of considering the statute of limitations, the facts pertaining to this question are stated separately. Facts relative to estoppel are set out *infra*.

---

[1] Only four of the eight were served. Thereafter, plaintiff took a nonsuit as to two of the defendants.

Jason Ferguson, an infant, brings this action alleging that the defendant Patterson (Dr. Patterson or defendant), a dermatopathologist, failed to diagnose the presence of malignant melanoma. The alleged misdiagnosis occurred on April 7, 1992, when Dr. Patterson reviewed a slide specimen taken from a mole on Jason's face and determined there was no malignancy. The malignancy remained undiscovered until February 2, 1994. Plaintiff filed this Motion for Judgment on April 14, 1995. Dr. Patterson maintains that the statute of limitations had expired by the time of filing.

Dr. Patterson asserts that the statute of limitations began to run at the time of a misdiagnosis, the injury to the plaintiff; therefore, plaintiff's action is barred by the applicable statute of limitations of two years under § 8.01-243.1. At the hearing, defendant called Dasriq Qureshi, M.D., a hematologist-oncologist, a specialist in blood disease and cancer, who has practiced treating cancer patients. Dr. Qureshi described a malignancy as a genetic mutation within the cells themselves, which induce other cells to acquire the mutation. Once mutation is acquired, the cells continue to grow. According to Dr. Qureshi injury begins at the time of mutation, at the cellular level.

Plaintiff has three points in response to Dr. Qureshi's testimony. First, Dr. Qureshi does not practice pediatric oncology. Second, Dr. Qureshi testified he had not reviewed any medical records in the case. Third, Dr. Qureshi testified that although rare, there are cases of remission. Based on the following, the court finds that the Special Plea has merit and the statute of limitations does bar this claim.

## Discussion of Law

According to Virginia Code Section 8.01-243.1:

> any cause of action occurring after July 1, 1987, on behalf of a person who was a minor at the time the cause of action accrued for personal injury ... against a health care provider ... shall be commenced within two years of the date of the last act or omission giving rise to the cause of action except if the minor was less than eight years of age at the time of the occurrence of the malpractice, he shall have until his tenth birthday to commence an action.

Va. Code § 8.01-243.1.

Further, according to Virginia Code § 8.01-230, "In every action for which a limitation period is prescribed, the cause of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury

is sustained in the case of injury to the person ... ." Va. Code § 8.01-230. Plaintiff claims that the defendant failed to diagnose the presence of malignant melanoma on April 7, 1992. Applying these statutes to this case, plaintiff, who was seven years old on April 7, 1992, had until August 1, 1994 (his tenth birthday) to commence an action against the defendant. However, the Motion for Judgment was not filed until April 14, 1995, over eight months after the statute of limitations had expired.

Relevant case law states that in medical malpractice actions, the statute of limitations begins to run when the act of malpractice is committed, not when it is discovered. *See Scarpa v. Melzig,* 237 Va. 509, 379 S.E.2d 307 (1989); *Hawks v. DeHart,* 206 Va. 810, 146 S.E.2d 187 (1966); *Granahan v. Pearson,* 782 F.2d 30 (4th Cir. 1985). In addition, the burden is on the defendant relying on the defense of the statute of limitations to prove when the plaintiff sustained the injury, triggering the statute of limitations.

Here, plaintiff alleges that he had a malignancy which was misdiagnosed on April 7, 1992. According to the testimony of Dr. Qureshi, an expert witness for the defendant, injury at the cellular level had occurred at this point. Thus, because the alleged malpractice and injury to plaintiff occurred on April 7, 1992, when plaintiff was seven years old, the statute of limitations began to run on that date and expired on August 1, 1994, plaintiff's tenth birthday. By the time plaintiff filed the Motion for Judgment on April 14, 1995, the statute of limitations had expired and the claim is therefore barred.

The questions plaintiff has raised about Dr. Qureshi go to the weight of his testimony, not admissibility. Dr. Qureshi testified that, though he does not treat children nor has he reviewed the records in this case, the phenomenon of cancer and how it operates on the cellular level is common to both adults and children. There is no evidence that plaintiff's cancer has ever gone into remission.

### Equitable Estoppel

Ms. Ferguson, mother and next friend, testified regarding her contacts with risk management of MCV Associated Physicians, the group with which Dr. Patterson was a practicing member at the time. According to Ms. Ferguson she spoke on numerous occasions with Margaret Grey Sweeney, an attorney, representing risk management. According to Ms. Ferguson, Ms. Sweeney told her, on numerous occasions, that MCV Associated Physicians wanted to reach a settlement and avoid going to court but, if Ms. Ferguson obtained an attorney, there would be no settlement. Ms. Ferguson stated that at a meeting with Ms. Sweeney and people she believed were doctors, settlement was

discussed. She said she got the impression there would e an offer of settlement and left the meeting feeling the conflict was resolved. Subsequent telephone conversations reinforced Ms. Ferguson's belief that at the time a settlement was forthcoming but, if an attorney was hired, there would be no settlement. After August, 1994, the time Dr. Patterson is now claiming the statute of limitations ran out, Ms. Ferguson was told there would be no settlement. Kathy Crasy, Ms. Ferguson's sister, who also attended the meetings, testified, corroborating Ferguson's testimony.

Sweeney did not attend the hearing. However, several weeks after the hearing, defendant submitted Sweeney's affidavit as evidence of what went on concerning Ferguson's contacts with risk management.[2] Sweeney states that Ferguson contacted MCV Associated Physicians in March, 1944. At that time, Sweeney explained to Ferguson the claims evaluation process established by MCV Associated Physicians and obtained a release from Ferguson for her son's records. She states that she explained to Ferguson that, if the reviews showed a violation of the standard of care, then there could be a settlement, if the reviews did not show a violation, no settlement would be offered. The records were sent to outside experts for review.

The review did not find a violation of the standard of care. At that point, according to Sweeney, Ms. Ferguson was given two options: (1) another review or (2) a meeting with Sweeney, the executive director and Dr. Frable, chairman of the Division of Surgical Pathology. Ferguson chose to have the meeting.

Again, according to Sweeney's affidavit, at the meeting in April, 1994, Ferguson expressed skepticism, noting that physicians who reviewed her sons's pathology slides could be biased or friends of MCV. Ferguson elected to have another review, to be done this time by the Armed Forces Institute of Pathology. This review resulted in a finding of no malpractice. So, in June, 1994, Sweeney told Ferguson the matter would not be settled.

At another meeting in July, 1994, Sweeney with others gave Ferguson the reviews in a sealed envelope and reiterated no settlement was possible without a finding of fault.

According to Sweeney, she did not hear from Ferguson again until October, 1994. At that time, Ferguson expressed agitation and accused MCV with being negligent. By this time, apparently, Ferguson had gotten an evaluation at St. Jude's Hospital where Jason had been submitted for treatment. At the hearing,

---

[2] The court received the affidavit around February 5, 1997, with an accompanying letter from defense counsel indicating a copy as sent to plaintiff's counsel.

Ferguson testified that doctors at St. Jude's diagnosed Jason as having malignant melanoma.

## Discussion

Equitable estoppel "is the consequence worked by operation of law which enjoin one whose action or inaction has induced reliance by another from benefitting from a change in his position at the expense of the other." *Employers Commercial Union Ins. Co. of Am. v. Great Am. Ins. Co.*, 214 Va. 410, 200 S.E.2d 560 (1973). Furthermore, "Elements necessary to establish equitable estoppel, absent a showing of fraud or deception, are a representation, reliance, a change of position, and detriment." *Lataif v. Commercial Indus. Const., Inc.*, 223 Va. 59, 286 S.E.2d 159 (1982).

Based on the facts at hand, the plaintiff has not established the elements necessary for equitable estoppel. According to Ferguson's testimony, over the course of spring and summer 1994, Sweeney made several *representations* on behalf of risk management at MCV Associated Physicians leaving Ferguson with the impression that a settlement would be reached unless Ferguson hired an attorney. The evidence from Sweeney, however, is that any settlement would also depend on a showing of negligence from a review of Jason's records. Of all the reviews Sweeney had done, none of them determined malpractice, and thus Sweeney, on behalf of MCV Associated Physicians, never entered into any settlement discussion or negotiations.

On the one hand the thrust of Ferguson's testimony is that a settlement was at hand unless she obtained legal counsel, which she refrained from doing and thus did not file the action within the prescribed period. On the other hand, Sweeney asserts that, while she admonished Ferguson there could be no settlement discussions if Ferguson obtained counsel, settlement depended on a finding on review, that negligence was involved. Since there was never any such finding, MCV Associated Physicians would not even begin discussions toward settlement.

The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais*, is that when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the latter, the existence of a different state of facts from that indicated by his statements or

conduct, if the latter has so far changed position that he would be injured thereby.

*Heath v. Valentine,* 177 Va. 731, 737 (1941).

The "state of facts" according to Ferguson is that settlement was all but assured as long as she did not engage counsel.

The evidence from the defendant's side, as shown by Sweeney's statement, comports more with reasons and experience under the facts. Well settled ethical rules preclude a counsel from contacting, much less negotiating with a represented adverse party. So, there is some basis to Sweeney's statement that no discussions could follow if Ferguson had counsel. Without counsel Sweeney was free to deal with Ferguson individually. Ferguson's testimony does not describe, delineate, detail, or outline any terms for any settlement agreement. Rather, her testimony only supports that settlement depended on her not retaining counsel. Yet, over the course of several months when the records were submitted for review, which Ferguson does not dispute, no settlement offer was made or any terms of such ever mentioned, according to her testimony. Without a settlement offer ever being made, there is no inducement, no reasonable reliance, and thus equitable estoppel cannot apply. Furthermore, any possibility of settlement depended on a finding of negligence from the risk management initiated reviews. No such finding of negligence ever occurred.

In *City of Bedford v. James Leffel & Co.,* 558 F.2d 216 (4th Cir. 1977), the defendant delivered machinery to plaintiff in April, 1969, as requested by plaintiff. When the machinery did not work properly, the defendant took various unsuccessful remedial and repair measures. The plaintiff commenced an action for breach of contract, warranty of merchantability, and fitness for particular purpose on August 25, 1974. The plaintiff had relied on defendant's actions (attempts to repair) and assurances and did not file suit in time. The district court granted the defendant's motion for summary judgment ruling that according to Virginia law, the statute of limitations began running upon delivery in April, 1969 and expired in 1973. However, citing *Wilson v. Butt,* 168 Va. 259 (1937), and *Sadler v. Marsden,* 160 Va. 392 (1933), the Fourth Circuit Court of Appeals upheld the plaintiff's contention that in Virginia, the doctrine of equitable estoppel precludes a defendant from raising expiration of the statute of limitations as a defense.

The court in *City of Bedford* described equitable estoppel by stating: one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the

bar of the statute [of limitations], and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.

*City of Bedford*, 558 F.2d at 218. Furthermore, the court stated that deceit is not an essential element; "it is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire." *Id.* More pertinent here, the court in *City of Bedford* also ruled that the defendant's actions "may lead the injured party to reasonably believe that it will receive satisfaction without resort to litigation." *Id.*

The problem the court has with the view Ferguson advances is that it was not reasonable to believe that a settlement would be made because such settlement depended on a review of records, all of which turned out unfavorable to any claim. Although the court finds it troubling that, after two or three reviews initiated by risk management, no malpractice was found while the malignancy was found by St. Jude's, there is no reliance because settlement depended on the reviews.

For the foregoing reasons, the court cannot find that the defendant is estopped from asserting the statute of limitations in this case.