# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 26, 2016 Session

## SANDRA CLARK ET AL. v. CHRISTOPHER POWERS

**Appeal from the Circuit Court for Hamilton County**
**No. 13C884      John B. Bennett, Judge**

---

### No. E2015-02226-COA-R9-CV-FILED-AUGUST 19, 2016

---

This interlocutory appeal presents an issue regarding whether a cause of action related to an automobile accident was barred by the running of the statute of limitations as a result of a lack of compliance with the service of process requirements of Tennessee Rule of Civil Procedure 3 upon the defendant tortfeasor. The plaintiffs assert that their counsel had entered into an agreement with the defendant's liability insurer, acting on behalf of the defendant, to forbear service of process until settlement negotiations ended and litigation ensued. Upon an offer of settlement from the defendant's liability insurer, the plaintiffs notified their underinsured motorist carrier of their intent to accept the liability insurer's offer to pay the amount of its policy limit. The underinsured motorist carrier elected to pay the amount of the liability insurer's policy limit in order to protect its subrogation rights against the defendant. The underinsured motorist carrier subsequently began corresponding with the plaintiffs' counsel and investigating the plaintiffs' claim on its own behalf. Following the expiration of the one-year statute of limitations period, the defendant filed a motion to dismiss based upon lack of service of process. The underinsured motorist carrier thereafter filed a similar motion. The trial court, upon considering documents outside the record, converted the motions to dismiss to motions for summary judgment. The motions were denied. The defendant and the underinsured motorist carrier sought and were granted permission for an interlocutory appeal. Discerning no error in the trial court's denial of summary judgment to the defendant and the underinsured motorist carrier, we affirm and remand for further proceedings.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

J. Christopher Rose, Nashville, Tennessee, for the appellant, Christopher Powers.

Todd Covert, Knoxville, Tennessee, for the appellant, Allstate Insurance Company.

Jerrold J. White, Chattanooga, Tennessee, for the appellees, Sandra Clark and Sandy Clark.

**OPINION**

I. Factual and Procedural Background

This action arose from an automobile accident that occurred in Hamilton County on July 6, 2012. On July 3, 2013, Sandra Clark and her husband, Sandy Clark, filed suit against Christopher Powers, alleging that Mr. Powers was at fault for the accident. Process was issued the same day. Allstate Insurance Company ("Allstate"), the Clarks' underinsured motorist carrier, was served with process on July 16, 2013. The Clarks' counsel, Jerrold White, sent correspondence to Mr. Powers's insurance company, The General Insurance ("The General"), enclosing a copy of the complaint. Mr. White and a representative for The General, acting on behalf of Mr. Powers, thereafter began negotiations to settle the claim.

In his original letter to The General dated July 10, 2013, Mr. White stated, *inter alia*:

> We have agreed to continue to work to settle this matter. To that end, I have not served a copy of the complaint upon Mr. Powers. I am currently working on getting a completed demand package to you for your review. If we are unable to settle, I will then serve Mr. Powers and begin the litigation process.

The General responded by letter dated July 22, 2013, stating:

> We are in receipt of the suit filed in reference to the above accident. This will request an OPEN extension and your signature will confirm this if you are agreeable. If you have a demand package, please submit this for our review.

Mr. White subsequently replied via letter dated July 23, 2013, wherein he stated in pertinent part:

> Please find enclosed my signature upon our agreement to provide an open extension to answer to the lawsuit filed in the above-referenced claim.

2

Please note also that I have agreed not to serve your insured while we negotiate the claim.

The General eventually offered to pay its policy limit of $25,000 to the Clarks in settlement of the claim, contingent upon Allstate releasing its subrogation rights against Mr. Powers and The General. The General sent notice of this settlement offer to Allstate on March 7, 2014. Mr. White also apparently sent notice to Allstate that the Clarks intended to accept The General's offer of settlement. Allstate responded to this correspondence by letter dated February 24, 2014, wherein Allstate agreed to "front" the limits of The General's liability insurance policy with Mr. Powers, *see* Tenn. Code Ann. § 56-7-1206(k), in order to preserve Allstate's right of subrogation against Mr. Powers. Although no further correspondence was exchanged between The General and Mr. White, Allstate subsequently sent periodic form letters to Mr. White in May and August 2014 and April 2015, stating that "litigation is pending" or "[o]ur medical and or wage investigation is continuing."

Meanwhile, the summons issued to Christopher Powers on July 3, 2013, was never returned to the trial court. Mr. White did not have the summons reissued within one year pursuant to Tennessee Rule of Civil Procedure 3. Consequently, on January 26, 2015, Mr. Powers's counsel filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12, based upon the lack of service of process on Mr. Powers. Allstate filed a similar motion to dismiss on March 26, 2015, also based on the lack of service upon Mr. Powers.

The trial court conducted a hearing regarding the motions on April 6, 2015. Because references were made to documentation outside the pleadings, the trial court decided to convert the motions to dismiss to motions for summary judgment. *See* Tenn. R. Civ. P. 12.02; *Van Zyll v. Mitchell*, No. E2011-00489-COA-R3-CV, 2012 WL 2899065 at *5 (Tenn. Ct. App. July 17, 2012) (holding that when the defendant's motion to dismiss was "predicated on service of process and necessitated consideration of matters outside of the Plaintiffs' complaint," the motion to dismiss had to be treated as a motion for summary judgment.).

The court ordered the parties to file statements of material facts and memoranda with regard to summary judgment. The parties complied. Mr. White filed his own affidavit, wherein he stated, *inter alia*, that he had entered into an agreement with The General's representative to the effect that The General would receive an open extension of time to file an answer and that Mr. White would not serve Mr. Powers "unless negotiations stopped and The General Insurance hired counsel to begin the litigation process." Mr. White asserted that negotiations with Allstate had been ongoing since

3

Allstate agreed to front The General's settlement offer. No opposing affidavits or other evidence was filed by Mr. Powers or Allstate.

On June 15, 2015, the trial court conducted a hearing regarding the summary judgment motions. Following the parties' arguments, the trial court denied summary judgment to Mr. Powers and Allstate. The trial court entered an order memorializing its ruling on June 26, 2015. In that order, the court found:

1. Plaintiff's counsel sent a copy of the Complaint in this case to The General Insurance on July 10, 2013. The General Insurance acknowledged receipt of the Complaint in correspondence dated July 22, 2013 sent to Plaintiff's attorney.

2. Plaintiff's attorney and a representative of The General Insurance entered into an open extension agreement to answer the lawsuit on July 23, 2013.

3. Included in the open extension agreement was an agreement that Plaintiff would not serve the Defendant while negotiating with The General Insurance.

4. The General Insurance tendered an offer of settlement of the policy limits to the Plaintiff. On February 24, 2014, Allstate Insurance, the uninsured/underinsured motorist carrier, notified Plaintiff and The General Insurance that Allstate was "fronting" The General Insurance's offer of settlement made to the Plaintiff.

5. The General Insurance did not give notice to Plaintiff's attorney of any intention to rescind the open extension agreement.

6. The General Insurance never retained counsel nor made an appearance in this case to answer and/or defend this case.

7. Negotiations between the Plaintiff and Allstate Insurance have been continuing since Allstate Insurance elected to "front" The General Insurance's offer of settlement.

The court concluded that Mr. White and The General had a clear agreement regarding forbearance of service and that this agreement applied with equal force to Allstate. The court therefore denied the motions for summary judgment.

4

On July 23, 2015, Mr. Powers filed a motion seeking an interlocutory appeal. Allstate subsequently filed a similar motion. During a hearing on August 31, 2015, the trial court granted the parties an interlocutory appeal. Although the parties encountered difficulty regarding the finalization of the order, the trial court ultimately entered an order granting interlocutory appeal on November 17, 2015. Mr. Powers timely sought permission for an interlocutory appeal from this Court, which was granted on January 26, 2016.

## II. Issue Presented

As this Court has previously explained, "[f]or interlocutory appeals, the only issues that can be raised are those certified in the trial court's order granting permission to seek an interlocutory appeal and in the appellate court's order granting the interlocutory appeal." *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000). In this case, the trial court did not certify an issue in its order granting permission to seek an interlocutory appeal; however, this Court did certify the following issue in its order granting permission for an interlocutory appeal:

> Whether the cause of action was barred by the running of the statute of limitations as a result of a lack of compliance with the service of process requirements of Rule 3 of the Rules of Civil Procedure.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a

specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Service of Process

Mr. Powers and Allstate argue that the trial court erred in failing to grant summary judgment on all claims asserted by the Clarks due to the Clarks' failure to have process served on Mr. Powers or reissued to him within one year, pursuant to Tennessee Rule of Civil Procedure 3. Rule 3 provides:

All civil actions are commenced by filing a complaint with the clerk of the court. An action is commenced within the meaning of any statute of

limitations upon such filing of a complaint, whether process be issued or not issued and whether process be returned served or unserved. If process remains unissued for 90 days or is not served within 90 days from issuance, regardless of the reason, the plaintiff cannot rely upon the original commencement to toll the running of a statute of limitations unless the plaintiff continues the action by obtaining issuance of new process within one year from issuance of the previous process or, if no process is issued, within one year of the filing of the complaint.

(Emphasis added.) Furthermore, Tennessee Rule of Civil Procedure 4.01 provides:

(1) Upon the filing of the complaint the clerk of the court wherein the complaint is filed shall forthwith issue the required summons and cause it, with necessary copies of the complaint and summons, to be delivered for service to any person authorized to serve process. This person shall serve the summons, and the return indorsed thereon shall be proof of the time and manner of service. A summons may be issued for service in any county against any defendant, and separate or additional summonses may be issued against any defendant upon request of plaintiff. Nothing in this rule shall affect existing laws with respect to venue.

(2) A summons and complaint may be served by any person who is not a party and is not less than 18 years of age. The process server must be identified by name and address on the return.

(3) If a plaintiff or counsel for plaintiff (including third-party plaintiffs) intentionally causes delay of prompt issuance of a summons or prompt service of a summons, filing of the complaint (or third-party complaint) is ineffective.

It is undisputed that Mr. Powers was not served with process prior to the expiration of ninety days following the issuance of process. It is further undisputed that new process was not issued within one year. Mr. Powers therefore asserts that the statute of limitations has expired regarding any claims against him pursuant to Tennessee Rules of Civil Procedure 3 and 4. Allstate contends that because Mr. Powers, the actual tortfeasor, was never served, there can be no liability imposed upon Allstate as the Clarks' underinsured motorist carrier. *See Liput v. Grinder*, 405 S.W.3d 664, 671 (Tenn. Ct. App. 2013) ("[I]n order to impose liability on an uninsured motorist carrier . . . the plaintiff must not only serve the uninsured motorist carrier, but must also properly serve the alleged tortfeasor within the applicable statute of limitations."); *Webb v. Werner*, 163 S.W.3d 716, 718 (Tenn. Ct. App. 2004) ("A plaintiff who fails to establish legal liability

7

against a defendant tortfeasor cannot impose liability upon her uninsured motorist carrier for the acts of that same tortfeasor."). Although Tennessee Code Annotated § 56-7-1206(d) (2008) provides that if service issued to the tortfeasor's last known address is returned "not to be found" or with some similar notation, service upon the insurance company will be sufficient, this statutory provision cannot be relied upon when service upon the tortfeasor is never attempted. *See Liput*, 405 S.W.3d at 675-76.

The Clarks assert, however, that Mr. Powers and Allstate are equitably estopped from relying upon the statute of limitations as a defense because the Clarks and The General, acting on Mr. Powers's behalf, had an agreement that Mr. Powers would not be served while settlement negotiations were ongoing. Although Allstate was not a party to this agreement, the Clarks posit that Allstate is still bound by it because Allstate "fronted" the money that The General had agreed to pay in settlement of the claim without objecting to the lack of service of process on Mr. Powers. The Clarks contend that they relied on this agreement to their detriment and were "lulled" into thinking that service of process on Mr. Powers had been waived.

In support of their estoppel argument, the Clarks rely on the case of *Jones v. Watson*, No. 02A01-9602-CV-00038, 1996 WL 711475 at *4 (Tenn. Ct. App. Dec. 12, 1996), wherein the plaintiff, whose wife was killed in a motor vehicle accident, negotiated a settlement with the defendant's insurance company, and the insurance company agreed to pay the policy limit. A check was issued to the plaintiff by the insurance company, but the check could not be negotiated at that time due to a dispute with the workers' compensation carrier, who was paying the decedent's medical expenses and death benefits. *Id*. at *2. The defendant's insurance company subsequently issued a second check, followed by a letter to the plaintiff's counsel confirming the settlement and noting that the check written on April 22 would only be good until October 22. *Id*. at *3. The defendant's insurer informed the plaintiff's counsel that the check could be reissued after that date if necessary. *Id*. At or near the one-year statute of limitations deadline, the plaintiff's counsel filed a wrongful death action and had process issued for the defendant, but said process was returned unserved. *Id*. No further summons were issued. *Id*. The defendant insurer subsequently filed a motion to dismiss the wrongful death action for lack of service of process. *Id*.

This Court in *Jones* discussed the doctrine of equitable estoppel, as explained in *Sparks v. Metro. Gov't of Nashville & Davidson Cty.*, 771 S.W.2d 430, 433 (Tenn. Ct. App. 1989), as follows:

> Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing

suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

* * * *

> The doctrine is, of course, most clearly applicable where the aggrieved party's delay in bringing suit was caused by his opponent's intentional misrepresentation; but deceit is not an essential element of estoppel. It is sufficient that the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire.

> *City of Bedford v. James Leffel & Co.,* 558 F.2d 216, 218 (4th Cir. 1977) (footnote and citations omitted).

*Jones*, 1996 WL 711475 at *4. In reliance on the above authority, the *Jones* Court determined that the defendant insurer was equitably estopped from asserting the statute of limitations as a defense in the wrongful death action because the parties had clearly reached a settlement and the defendant insurer had issued a check to pay such settlement on two different occasions. *Id.*

Similarly, in the case of *Ingram v. Elledge*, No. 01-A-019101-CV-00009, 1991 WL 83349 at *1 (Tenn. Ct. App. May 22, 1991), this Court determined that the defendant was estopped from relying upon a statute of limitations defense when there was evidence that the plaintiffs' attorney and the defendant's liability insurer entered into an agreement that the plaintiffs would not file suit until settlement negotiations failed. In *Ingram*, the plaintiffs' attorney had been negotiating with the defendant's liability insurer, providing medical and other records requested by the insurer, for slightly more than one year when the liability insurer informed the plaintiffs' attorney that it intended to rely upon the one-year statute of limitations. *Id.* The plaintiffs filed their lawsuit shortly thereafter but more than one year following the subject automobile accident. *Id.* The defendant then filed a motion for summary judgment based on the statute of limitations, which the trial court granted. *Id.* Following the trial court's grant of summary judgment to the defendant, the plaintiffs' underinsured motorist carrier filed a motion for judgment on the pleadings, based on the dismissal of the defendant due to expiration of the statute of limitations. *Id.* That motion was also granted by the trial court. *Id.*

On appeal, the *Ingram* Court reversed the trial court's grant of summary judgment to both the individual defendant and the plaintiffs' underinsured motorist insurer. *Id.* at

\*3.  This Court determined that there was evidence to support the plaintiffs' claim that "[the plaintiffs' counsel] agreed with [the defendant's liability insurer] to forbear suit until the parties were able to fully negotiate and attempt settlement."  *Id*. at \*2. Therefore, this Court found that this evidence presented a genuine issue of material fact precluding summary judgment.  *Id*. at \*3.  The Court thus reversed the trial court's grant of summary judgment and remanded the matter for a trial on the merits.  *Id*.

Based on the above precedent, we conclude that the trial court herein correctly denied Mr. Powers's motion for summary judgment.  As previously explained, we review the trial court's denial of summary judgment *de novo* with no presumption of correctness. *See Rye*, 477 S.W.3d at 250.  Based upon our thorough review of the record, we conclude that the evidence demonstrates the existence of an agreement between the Clarks' counsel and The General, on behalf of Mr. Powers, that would estop Mr. Powers from relying upon the statute of limitations as a defense in this matter.  Mr. White's affidavit establishes that he had entered into an agreement with The General to forbear service of process upon Mr. Powers until such time as settlement negotiations failed.[1]  No countervailing evidence appears in the record, and neither Mr. Powers nor Allstate challenged the existence of this agreement at the trial court level or on appeal. Furthermore, there is no proof or argument that The General ever rescinded this agreement.

At the time when The General provided notice to Allstate that it was offering to settle the matter by paying its $25,000 policy limit, the Clarks transmitted notice to Allstate of their intent to accept such offer.  Allstate declined to accept the settlement, however, instead opting to "front" the $25,000 offer and preserve its subrogation rights. *See* Tenn. Code Ann. §56-7-1206(k).  Thus, no settlement was reached among all parties, and Mr. Powers and The General were not released from liability.  *Id*.  As provided by the relevant subsections of the uninsured motorist statute:

> (f)  Notwithstanding subsection (c), if a party or parties alleged to be liable for the bodily injury or death of the [underinsured motorist carrier's] insured offers the limits of all liability insurance policies available to the party or parties in settlement of the insured's claim, the insured or the insured's personal representative may accept the offer, execute a full release of the party or parties on whose behalf the offer is made and

---

[1]There can be no question that Mr. Powers, as an insured of The General, would be bound by any agreement entered into by his liability insurer on his behalf. *See, e.g., State Auto. Ins. Co. of Columbus, Ohio v. Rowland*, 427 S.W.2d 30, 33 (Tenn. 1968) ("In return for the insurance company's agreement to cover losses occasioned by the negligent acts of the insured, the insured must surrender his right to control the defense of claims brought against him.")

preserve the right to seek additional compensation from the insured's uninsured motorist insurance carrier upon agreement of the insured or the insured's personal representative to submit the insured's uninsured motorist claim to binding arbitration of all issues of tort liability and damages, provided:

(1)(A) The offer must be for the sum of the limits of all liability insurance policies providing coverage to the party or parties on whose behalf the offer is made and in an aggregate amount that is less than the uninsured motorist coverage applicable to the bodily injury or death of the insured; or

(B) If, by payments to other injured parties, the limits of all liability insurance policies providing coverage to the party or parties on whose behalf the offer is made have been reduced to an amount that is less than the limits of the insured's uninsured motorist coverage, the offer must be for the total amount of coverage that remains available to the party or parties on whose behalf the offer is made; and

(2) If the settlement does not release all parties alleged to be liable to the insured, arbitration of the uninsured motorist claim shall not be conducted until the claims against all such other parties have been fully and finally disposed of by settlement, final judgment or otherwise.

(g) Parties proposing to accomplish a settlement pursuant to this section shall comply with the following requirements and conditions:

(1) Upon request, the insured or the insured's personal representative or attorney shall provide the liability insurance company or companies providing coverage to the party or parties to be released, the name and address of the insurance company or companies providing the insured with uninsured motorist coverage, the policy number or numbers and the limits of uninsured motorist coverage available to the insured;

(2) The liability insurance company or companies providing coverage to the party or parties to be released shall give written notice of the offer to the insured's uninsured motorist insurance carrier or its attorney, provide verification of the coverage upon request and confirm to the uninsured motorist insurance carrier or its attorney that the party or parties to be released will agree in writing to cooperate with the uninsured motorist insurance carrier in connection with the arbitration of the uninsured motorist claim; provided, that the uninsured motorist insurance carrier will

agree to waive its subrogation rights against the party or parties to be released;

(3) The insured or the insured's personal representative or attorney shall give written notice to the uninsured motorist insurance carrier or its attorney of the insured's intent to accept the offer and agreement to submit the uninsured motorist claim to binding arbitration;

(4) After receipt of both of the notices referred to in subdivisions (g)(2) and (3), the uninsured motorist insurance carrier shall have thirty (30) days to give notice to its insured or the insured's personal representative or attorney and the liability insurance carrier or carriers or their attorneys that it consents to the settlement, that it will agree to binding arbitration of the insured's uninsured motorist claim and that it will waive its subrogation rights against the party or parties to be released in exchange for their written agreement to cooperate in connection with the arbitration;

* * *

(k) Notwithstanding the provisions of this section relating to binding arbitration, after receipt of both of the notices referred to in subdivisions (g)(2) and (3), the uninsured motorist insurance carrier, at its option, may elect to decline binding arbitration and preserve its subrogation rights; provided, that within thirty (30) days after receipt of both of the notices, it pays the insured the full amount of the offer made by the liability insurance company or companies providing coverage to the party or parties seeking the release.  Acceptance of the amount by the insured [plaintiffs] shall not operate as a release of the liability insurance carrier's insureds, nor shall it prevent or preclude the insured from seeking additional compensation from the insured's uninsured motorist insurance carrier. Upon acceptance by the insured, the uninsured motorist insurance carrier shall be subrogated to the extent of its payment and further subrogated to the extent it is required to make further payments of compensatory damages under the uninsured motorist coverage of its policy.  Upon final disposition of the case, the liability insurance carrier or carrier, shall reimburse the uninsured motorist insurance carrier in the amount of policy limits applicable to the defendant or defendants on whose behalf the offer was made or in the amount of the judgment rendered against the defendant or defendants, whichever is less. In the event the judgment is in favor of the defendant or defendants, the uninsured motorist insurance carrier shall not be entitled to reimbursement for any amounts paid its insured pursuant to this subsection (k).  In the event the judgment exceeds the liability insurance coverage available to the

defendant or defendants, the uninsured motorist insurance carrier shall be subrogated against the defendant or defendants to the extent of payments it is required to make in excess of the liability insurance coverage. The uninsured motorist insurance carrier shall be entitled to credit for the total amount of damages collected by the insured from all parties alleged to be liable for the bodily injury or death of the insured whether obtained by settlement or judgment and whether characterized as compensatory or punitive damages.

Tenn. Code Ann. § 56-7-1206 (2008) (emphasis added).

Pursuant to the express terms of the applicable statute, when Allstate declined The General's offer of settlement for the $25,000 policy limit, deciding instead to "front" that money and preserve its subrogation rights, no settlement agreement was accomplished between the parties. Consequently, Mr. Powers and The General were not released from liability. As Allstate continued to correspond with the Clarks' counsel and investigate the Clarks' claim, the agreement between The General and counsel for the Clarks (regarding forbearance of service upon Mr. Powers until such time as settlement negotiations ended) was still in effect. Therefore, the trial court properly denied summary judgment to Mr. Powers and Allstate based on evidence of the agreement regarding service and ongoing settlement negotiations.

Mr. Powers seeks to rely upon precedent holding that negotiation or investigation of a claim by a defendant or defendant's insurer does not amount to a waiver of service. *See Crump v. Bell*, No. W1999-00673-COA-R3-CV, 2000 WL 987289 at *3 (Tenn. Ct. App. July 12, 2000) (determining that a liability insurer's act of negotiating with the plaintiff's counsel does not equate to a waiver of service); *Toney v. Cunningham*, No. 02A01-9801-CV-00005, 1999 WL 188291 at *3 (Tenn. Ct. App. Apr. 6, 1999) (holding that an agreement by the plaintiff's counsel and defendant's counsel that defendants would belatedly file an answer does not amount to waiver of service of process); *Occhipinti v. Stephens*, No. 01-A-01-9504-CV-00133, 1995 WL 571849 at *3 (Tenn. Ct. App. Sept. 29, 1995) (finding no equitable estoppel when "the proof shows only that plaintiffs' counsel assumed that it was not necessary to get the defendant served; and that assumption was based on the fact that the insurance adjuster said it didn't matter to him whether the defendant was served or not."). We find this precedent to be unavailing in this matter, however, because of evidence existing of an actual agreement between the Clarks' counsel and The General to forbear service of process until settlement negotiations had ended.

Allstate contends:

Lacking process on Defendant Powers, in order to maintain a direct action against Allstate, Plaintiff[s] must show that a direct[] action against the UM Carrier is triggered under TCA § 56-7-1206(d) which requires that process issued against the True Defendant be "returned by the sheriff or other process server marked, 'Not to be found in my county,' or words to that effect."

We disagree. As previously explained, this was not a direct action against the underinsured motorist carrier because Mr. Powers was still a viable defendant. In this instance, the controlling statutory subsection is Tennessee Code Annotated § 56-7-1206(a), which states:

Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though the insurance company were a party defendant. The company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection (a) shall prevent the owner or operator from employing counsel of the owner's own choice; and provided, further, that the evidence of service upon the insurance carrier shall not be made a part of the record.

In this case, it is undisputed that an action was instituted against Mr. Powers, owner of an underinsured vehicle, and that Mr. Powers's liability insurer, The General, agreed to a forbearance of service of process upon Mr. Powers. It is further undisputed that service was completed upon Allstate as the underinsured motorist carrier as though Allstate was a party defendant. As such, the requirements of Tennessee Code Annotated § 56-7-1206(a) have been met.

In contrast, Allstate seeks to rely upon Tennessee Code Annotated § 56-7-1206(d), which provides:

In the event that service of process against the uninsured motorist, which was issued to the motorist's last known address, is returned by the sheriff or other process server marked, "Not to be found in my county," or words to that effect, or if service of process is being made upon the secretary of state for a nonresident uninsured motorist and the registered notice to the last known address is returned without service on the uninsured motorist, the service of process against the uninsured motorist carrier, pursuant to this

14

section, shall be sufficient for the court to require the insurer to proceed as if it is the only defendant in the case.

As explained by our Supreme Court in *Brewer v. Richardson*, 893 S.W.2d 935, 938 (Tenn. 1995), "in enacting [Tennessee Code Annotated § 56-7-1206(d)] the legislature intended that a plaintiff be allowed to sue the uninsured motorist carrier directly if he is unable to obtain service of process over the uninsured motorist defendant." *See also Lady v. Kregger*, 747 S.W.2d 342, 345 (Tenn. Ct. App. 1987) ("Subsection (d) is the procedure required to perfect a direct action against the uninsured motorist carrier when the whereabouts of the alleged uninsured motorist are unknown."). Therefore, subsection (d) was not intended to apply when, as here, the uninsured motorist defendant is properly before the court. As such, this Court's rulings in *Liput* and *Webb* are not applicable. *See Liput*, 405 S.W.3d at 674; *Webb*, 163 S.W.3d at 718 ("[W]hen through inattention or neglect a plaintiff allows her cause of action against the tortfeasor to lapse, she is precluded from obtaining a recovery from the insurer as well.") (quoting *Winters v. Jones*, 932 S.W.2d 464, 465-66 (Tenn. Ct. App. 1996)).

In summary, the General, for itself and, more significantly, for its insured, Mr. Powers, agreed that the Clarks would not have to serve the defendant–in the words of the plaintiffs' counsel–"unless negotiations stopped and the General hired counsel to begin the litigation process." Allstate's agreement, pursuant to the provisions of Tennessee Code Annotated § 56-7-1206(k), to pay the plaintiffs "the full amount of the offer made by" the General, was not a "global" settlement of this litigation. The suit of the plaintiffs, including the subrogation claim of Allstate, against the defendant was not over, and the defendant's ultimate liability in this case is still to be determined. When Allstate filed its motion to dismiss, settlement discussions were still ongoing, and, as far as this record shows, the General had not yet "hired counsel to begin the litigation process." In this lawsuit, Mr. Powers was bound by this agreement, and service upon Mr. Powers, when the motion was filed, was not yet required under the agreement. Allstate was not entitled to summary judgment.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's denial of summary judgment to Mr. Powers and Allstate. We remand this case to the trial court for further proceedings. Costs on appeal are assessed one-half to Christopher Powers and one-half to Allstate Insurance Company.

_____
THOMAS R. FRIERSON, II, JUDGE

15